PHILADELPHIA CO. v. SECURITIES & EXCHANGE COMMISSION.

No. 9513.

United States Court of Appeals District of Columbia.

Argued April 18, 1947.
Decided Oct. 8, 1947.

Writ of Certiorari Denied Feb. 2, 1948.
See 68 S.Ct. 452.

Mr. Thomas J. Munsch, Jr., of Pittsburgh, Pa., with whom Messrs. Thomas E. Harris, of Washington, D. C., and C. Elmer Bown, of Pittsburgh, Pa., who entered appearances, and Mr. Philip A. Fleger, of Pittsburgh, Pa., were on the brief, for petitioner.

Mr. Roger S. Foster, Sol., of Philadelphia, Pa., with whom Messrs. David Ferber, Sp. Counsel, of Philadelphia, Pa., Paul S. Davis, Sp. Counsel, of Washington, D. C., Public Utilities Division, and Howard S. Guttmann, of Washington, D. C., of the Securities & Exchange Commission, were on the brief, for respondent.

Miss Anne X. Alpern, of Pittsburgh, Pa., of the bar of the Commonwealth of Pennsylvania, pro hac vice by special leave of court, for the City of Pittsburgh, intervenor.

Mr. Charles S. Rhyne, of Washington, D. C., entered an appearance for the City of Pittsburgh, intervenor.

Before STEPHENS, CLARK and WILBUR K. MILLER, Associate Justices.

STEPHENS, Associate Justice.

 This case is before the court upon a motion by the Securities and Exchange Commission, hereafter sometimes called the Commission, to dismiss a petition of the Philadelphia Company, a Pennsylvania corporation, hereafter called Philadelphia, for review of an "order" of the Commission revoking an exemption from the provisions of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79 et seq., hereafter sometimes referred to as the Act. The case presents also objections of the Commission to the issuance of a stay order pending disposition of the petition for review. The stay order is sought in the prayer of the petition and also by a separate motion filed by Philadelphia. The relevant facts are either alleged in the petition for review and admitted, for the purposes thereof, by the motion to dismiss (cf. American Sumatra Tobacco Corporation v. Securities and Exchange Commission, 1937, 68 App.D.C. 77, 93 F.2d 236), or are stated in the brief of Philadelphia and treated as true, or not denied, in the brief of the Commission. The facts thus made to appear are as follows:

Philadelphia, a registered public utility holding company under the Act, is the owner of the stock of gas, electric and street railway subsidiaries. One of these is the Pittsburgh Railways Company, a Pennsylvania corporation, hereafter sometimes called Pittsburgh, or the Debtor. Until May 10, 1938, Pittsburgh operated, as a unified street railway system in Pittsburgh, Pennsylvania, and vicinity, its own properties and also, pursuant to a system of leases, operating agreements and stock ownership, the properties of fifty-three so-called "underlier" companies. Of the latter ten are publicly controlled and are not subsidiaries of any registered holding company. Philadelphia owns all of the stock of Pittsburgh and of certain of its underlier companies, and is also a large creditor of Pittsburgh and a guarantor of obligations substantial in amount of Pittsburgh and of certain of its subsidiaries and underliers.[1] In view of Philadelphia's ownership of Pittsburgh's stock, Pittsburgh is a "subsidiary" within Section 2(a) (8) of the Act, 15 U.S.C.A. § 79b (a) (8). Not being an "electric utility company" or a "gas utility company," it is not a "public utility company" within the meaning of Section 2 (a) (5) of the

---

[1] The guarantees consist in part of direct guarantees of bonds and in part of guarantees of certain covenants and leases under which Philadelphia is obligated to pay interest, dividends and taxes which are primary liabilities or obligations of the underlier companies.

Act, 15 U.S.C.A. § 79b (a) (5), but it is nevertheless, as a "non-utility subsidiary" of a registered holding company, subject to the requirements of the Act unless in some manner exempted therefrom by action of the Commission.

On May 10, 1938, Pittsburgh filed a voluntary petition for reorganization under Section 77B of the Bankruptcy Act, 48 Stat. 912 (1934), as amended by 49 Stat. 664 (1935) and 49 Stat. 965 (1935), in the District Court for the Western District of Pennsylvania, hereafter referred to as the District Court. Trustees were appointed by the District Court on June 14 and since that date they have operated the same properties as were theretofore operated by Pittsburgh before the initiation of the bankruptcy proceedings. In the early stages of the reorganization Pittsburgh and its underliers were the subject of exemptions granted by the Commission under Section 3(d) of the Act, 15 U.S.C.A. § 79c (d), providing that "The Commission may, by rules and regulations, conditionally or unconditionally exempt any specified class or classes of persons from the obligations, duties, or liabilities imposed upon such persons as subsidiary companies or affiliates under any provision or provisions of this title . . .." The full text of this provision is set forth in the margin.[2] Exemption prior to April 1, 1941, was by virtue of the Commission's Rule U-3D-5 which relieved from the operation of most of the provisions of the Act all subsidiaries of registered holding companies which were not gas or electric utility companies, investment companies, service companies, or holding companies thereof. On April 1, 1941, the Commission by Rule U-49, also promulgated under Section 3 (d) of the Act, narrowed the scope of the Rule U-3D-5 exemption but nevertheless continued exemption from the otherwise applicable requirements of the Act of certain transactions by subsidiaries of registered holding companies if they were neither electric nor gas utility companies and were being reorganized in a United States court, and if the Commission had filed in such court notice of appearance pursuant to Section 208 of Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 608. Specifi-

cally, Rule U-49 so far as here pertinent provided:

**"Rule U-49. Certain Exemptions Granted to Nonutility Subsidiaries.**

"(a) Companies exempted.—The exemptions provided by this rule shall apply to any subsidiary of a registered holding company which subsidiary is not—

(1) A holding company,

(2) A public-utility company,

(3) A company engaged in the business of performing services or construction for or selling goods to associate holding or public-utility companies, or

(4) A company controlling, directly or indirectly, any company specified in clauses (1) to (3) above.

"(b) Exemption from sections 6(a) and 12 (c).—Any such subsidiary company shall be exempt from the provisions of section 6(a) of the Act [15 U.S.C.A. § 79f (a)] with respect to the issuance or sale of any securities to the vendor of supplies or equipment for use in the business of such subsidiary company, and from the provisions of any rule under section 12(c) of the Act [15 U.S. C.A. § 79l (c)] with respect to the acquisition, redemption or retirement of any such securities.

"(c) Transactions approved by a reorganization court.—Any such subsidiary company which is the subject of a proceeding for reorganization in any court of the United States in which proceeding the Commission has filed a notice of appearance pursuant to section 208 of chapter X of the Bankruptcy Act, as amended, or which is a subsidiary within the meaning of section 106(13) of said chapter X [11 U.S.C.A. § 506(13)], or of section 2(a) (8) of the Public Utility Holding Company Act, of any such subsidiary company which is the subject of such a proceeding, shall be exempt from any provision of the Act applicable to the appointment of any trustee for such company or to any transaction entered into with the approval (direct or indirect) of such court: *Provided,* That such transaction does not involve the acquisition of any utility assets or securities of any public-utility or holding company."

---

2 "The Commission may, by rules and regulations, conditionally or unconditionally exempt any specified class or classes of persons from the obligations, duties, or liabilities imposed upon such persons as subsidiary companies or affiliates under any provision or provisions of this title, and may provide within the extent of any such exemption that such specified class or classes of persons shall not be deemed subsidiary companies or affiliates within the meaning of any such provision or provisions, if and to the extent that it deems the exemption necessary or appropriate in the public interest or for the protection of investors or consumers and not contrary to the purposes of this title."

General Rules and Regulations under the Public Utility Holding Company Act of 1935, as amended to and including January 1, 1946.

The exemption granted by sub-paragraph (c) was applicable to the Pittsburgh reorganization because the Commission had, pursuant to Section 208 of Chapter X of the Bankruptcy Act, filed in the District Court notice of appearance in the reorganization proceeding.

In view of the exemptions successively afforded by Rules U-3D-5 and U-49(c) as above explained, the following steps were taken in the Pittsburgh reorganization proceeding: The trustees prepared a plan of reorganization covering not only Pittsburgh itself but also forty-nine of its underlier companies, including the ten which were publicly controlled and were not subsidiaries of any registered holding company. The plan contemplated compliance with the requirements of Section 172 of the Bankruptcy Act, 11 U.S.C.A. § 572. This provides that "After the hearing as provided in section 169 or section 170 [11 U.S.C.A. §§ 569, 570] of this Act, and before the approval of any plan, as provided in section 174 of this Act [11 U.S.C.A. § 574], the judge may, if the scheduled indebtedness of the debtor does not exceed $3,000,000, and shall, if such indebtedness exceeds $3,000,000, submit to the Securities and Exchange Commission for examination and report the plan or plans which the judge regards as worthy of consideration. *Such report shall be advisory only.*" (Italics supplied) The plan, in view of the exemptions, contained no provision for submission to the Commission under Section 11(f) of the Holding Company Act, 15 U.S.C.A. § 79k (f), providing that in any proceeding of a court of the United States in which a receiver or trustee is appointed for a registered holding company or any subsidiary thereof "a reorganization plan for a registered holding company or any subsidiary company thereof *shall not become effective unless such plan shall have been approved by the Commission after opportunity for hearing prior to its submission to the court.* . . ." (Italics supplied)[3]

The plan was, however, pursuant to Section 178 of the Bankruptcy Act, 11 U.S.C.A. § 578, submitted to the Pennsylvania Public Utility Commission, hereafter referred to as the Pennsylvania Commission, and, after a hearing, was on January 12, 1942, approved by it. The Securities and Exchange Commission through its counsel took a position before the Pennsylvania Commission adversary to the plan but made no assertion of jurisdiction under the Holding Company Act. As approved by the Pennsylvania Commission the plan was filed with the District Court on March 17, 1942, without prior submission to the Securities and Exchange Commission. Litigation then ensued in the District Court on the question of that court's jurisdiction with respect to Pittsburgh's underlier companies. This culminated in a decision by the United States Court of Appeals for the Third Circuit (In re Pittsburgh Railways Company, 1946, 155 F.2d 477, certiorari de-

---

[3] The full text of the section is: "(f) In any proceeding in a court of the United States, whether under this section or otherwise, in which a receiver or trustee is appointed for any registered holding company, or any subsidiary company thereof, the court may constitute and appoint the Commission as sole trustee or receiver, subject to the directions and orders of the court, whether or not a trustee or receiver shall theretofore have been appointed, and in any such proceeding the court shall not appoint any person other than the Commission as trustee or receiver without notifying the Commission and giving it an opportunity to be heard before making any such appointment. In no proceeding under this section or otherwise shall the Commission be appointed as trustee or receiver without its express consent. In any such proceeding a reorganization plan for a registered holding company or any subsidiary company thereof *shall not become effective unless such plan shall have been approved by the Commission after opportunity for hearing prior to its submission to the court.* Notwithstanding any other provision of law, any such reorganization plan may be proposed in the first instance by the Commission or, subject to such rules and regulations as the Commission may deem necessary or appropriate in the public interest or for the protection of investors, by any person having a bona fide interest (as defined by the rules and regulations of the Commission) in the reorganization. The Commission may, by such rules and regulations or order as it may deem necessary or appropriate in the public interest or for the protection of investors or consumers, require that any or all fees, expenses, and remuneration, to whomsoever paid, in connection with any reorganization, dissolution, liquidation, bankruptcy, or receivership of a registered holding company or subsidiary company thereof, in any such proceeding, shall be subject to approval by the Commission." (Italics supplied)

nied 1946, 329 U.S. 731, 67 S.Ct. 89, 90) holding that the District Court had jurisdiction over the Pittsburgh transportation system as a unit, including the underliers, notwithstanding that some of them were not subsidiaries of any registered holding company and notwithstanding that some of them were (according to the opinion in that case) solvent. In that litigation neither the courts nor the parties took into consideration the possibility of assertion by the Commission of jurisdiction over Pittsburgh and its underlier companies. The routine administration of the Debtor's estate proceeded, in view of the exemptions afforded by Rules U-3D-5 and U-49(c), without reference to the jurisdiction of the Commission, except as recognized by Section 172 of the Bankruptcy Act, 11 U.S.C.A. § 572, providing, as above stated, for an advisory report, and proceeded without the necessity of securing Commission approval by applications to it under the Holding Company Act. Transactions were entered into which might have been differently considered if the Commission's jurisdiction with reference to similar future transactions had been envisaged by the trustees. Philadelphia, the District Court, the Pennsylvania Commission, and the trustees of the Debtor, took important action and expended large sums of money in reliance upon the exemptions from the Holding Company Act.

In this posture of the reorganization in the District Court the Commission amended Rule U-49(c). In so doing it purported to act under Section 3(d) of the Act, 15 U.S.C.A. § 79c (d), printed above, and also under Section 20(a) of the Act, 15 U.S.C.A. § 79t (a), to the effect that "The Commission shall have authority from time to time to make, issue, amend, and rescind such rules and regulations and such orders as it may deem necessary or appropriate to carry out the provisions of this title . . ..," and also under Section 20(c) of the Act, 15 U.S.C.A. § 79t (c), providing that "The rules and regulations of the Commission shall be effective upon publication in the manner which the Commission shall prescribe. For the purpose of its rules, regulations, or orders the Commission may classify persons and matters within its jurisdiction and prescribe different requirements for different classes of persons

or matters. Orders of the Commission under this title shall be issued only after opportunity for hearing." The Commission first published, on November 25, 1946, as Holding Company Release No. 7011, "Notice of Proposed Rule Amending Rule U-49(c) Under the Public Utility Holding Company Act of 1935." This notice granted leave to file "data, views and comments." Philadelphia timely requested a hearing on the proposed amendment so conducted as to apprize all parties of the facts upon which a decision to adopt the proposed amendment to Rule U-49 might be predicated and as to permit cross-examination of witnesses, introduction of rebuttal evidence by any interested party, as to apprize each party of the data, views, comments and evidence of the other parties, and as to afford a stenographic record of the evidence in support of and in opposition to the proposed amendment.[4] This request was denied by the Commission. The latter, after permitting Philadelphia to make oral argument, adopted on February 28, 1947, the amendment to Rule U-49(c), the lawfulness of which Philadelphia, by virtue of the petition in the instant proceeding, seeks to review. The text of the Commission's action is as follows:

"The Securities and Exchange Commission, acting pursuant to the authority conferred upon the Commission by the Public Utility Holding Company Act of 1935, particularly Sections 3(d), 20(a) and 20(c) thereof, and deeming such action necessary for the exercise of the functions vested in it and necessary and appropriate in the public interest and for the protection of investors, hereby amends Rule U-49(c) by substituting a semicolon for the period at the end thereof and adding the following:

" 'Provided further, that this paragraph shall be inapplicable to any subsidiary company which is the subject of reorganization proceedings (or any subsidiary of such subsidiary company within the meaning of Section 106(13) of said Chapter X or of Section 2(a) (8) of the Public Utility Holding Company Act), where such subsidiary company, or any subsidiary thereof, is the issuer of any securities, or is the obligor on any obligations, which have been guaranteed or assumed by any registered holding company.'

---

[4] Philadelphia requested such a hearing under the theory that the proposed action of the Commission, although clothed in the language of rule making, was directed only to the Pittsburgh reorganization. It sought therefore the type of hearing contemplated for the exercise of the Commission's adjudicatory, not its rule making, powers, i. e., a hearing of the character contemplated by Sections 19 and 24(a) of the Act, 15 U.S.C.A. §§ 79s, 79x(a).

"This amendment to Rule U-49(c) shall become effective 30 days from the date hereof. "February 28, 1947"

The full text of Rule U-49(c) as amended is set forth in the margin.[5]

Since as above stated Philadelphia is the guarantor of obligations of Pittsburgh and certain of its subsidiaries and underlier companies, the effect of the amendment, if valid, is to revoke the exemption theretofore granted Pittsburgh by Rule U-49(c). The revocation concededly affected the Pittsburgh reorganization alone. The Commission said in its "Memorandum of Views of the Commission Accompanying Adoption of Rule Amending Rule U-49(c)": ". . . As far as we are aware that exemptive rule [Rule U-49(c) prior to the amendment] now affects only reorganization proceedings of Pittsburgh Railways Company and its related companies and one other group of companies, commonly called the Inland group. The proposed amendment does not affect the Inland group which has no guarantee relationships with its parents. . . ."

In consequence of this revocation, if valid, of the exemption theretofore afforded by Rule U-49(c), the Pittsburgh reorganization is subjected to the impact of Section 11 of the Holding Company Act, 15 U.S.C.A. § 79k. As a result the District Court will no longer have authority to approve a reorganization plan as submitted to it by the trustees, subject only to an *advisory report* of the Commission as provided in Section 172 of the Bankruptcy Act, 11 U.S.C.A. § 572. As appears from the terms of Section 11(f) of the Holding Company Act set forth above the plan cannot be made effective by the District Court unless it has been ·*approved* by the Commission after opportunity for hearing prior to its submission to the court. And not only will the Pittsburgh reorganization be brought within the ambit of Section 11(f), but also as a result of the revocation of the exemption, if valid, the reorganization and the administration of the Debtor's estate will, or may be, subject to the operation of all provisions of the Holding Company Act relating to subsidiaries of registered holding companies. Such provisions, if apparently applicable to particular transactions occurring or relationships existing in the course of the reorganization, must either be complied with or their applicability litigated before the Commission. Thus the trustees of Pittsburgh have under consideration the purchase of new street cars by means of the issuance of car trust securities. Unless these are to be issued to the vendor and are thus brought within the exemption of sub-paragraph (b) of Rule U-49 set forth above, the trustees must either comply with the provisions of Sections 6 and 7 of the Act, 15 U.S. C.A. §§ 79f and 79g, forbidding any registered holding company or subsidiary to issue or sell securities except in accordance with a declaration made effective by the Commission, or they must litigate the applicability of those provisions. The trustees are engaged in construction and repair work on the property of subsidiary and affiliated companies. They must therefore either satisfy the requirements of Section 12(b) of the Act, 15 U.S.C.A. § 79*l* (b), making it unlawful for a subsidiary to lend or in any manner extend its credit to a company in the same holding company system in contravention of rules, regulations or orders of the Commission, or litigate the question whether that section applies to such construction and repair work; or the trustees must, in respect of this work as the performance of a con-

[5] "**(c) Transactions approved by a re-organization court.**—Any such subsidiary company which is the subject of a proceeding for reorganization in any court of the United States in which proceeding the Commission has filed a notice of appearance pursuant to section 208 of Chapter X of the Bankruptcy Act, as amended, or which is a subsidiary within the meaning of section 106 (13) of said Chapter X, or of section 2(a) (8) of the Public Utility Holding Company Act, of any such subsidiary company which is the subject of such a proceeding, shall be exempt from any provision of the Act applicable to the appointment of any trustee for such company or to any transaction entered into with the approval (direct or indirect) of such court: *Provided*, That such transaction does not involve the acquisition of any utility assets or securities of any public-utility or holding company; *Provided further*, that this paragraph shall be inapplicable to any subsidiary company which is the subject of reorganization proceedings (or any subsidiary of such subsidiary company within the meaning of Section 106 (13) of said Chapter X or of Section 2 (a) (8) of the Public Utility Holding Company Act), where such subsidiary company, or any subsidiary thereof, is the issuer of any securities, or is the obligor on any obligations, which have been guaranteed or assumed by any registered holding company."

struction contract for an associate company, either comply with the requirements of Section 13(b), 15 U.S.C.A. § 79m (b), forbidding a subsidiary of a registered holding company to enter into or take steps in the performance of "any service, sales, or construction contract" except in accordance with such terms and conditions and subject to such limitations and prohibitions as the Commission by rules and regulations or order shall prescribe, or litigate before the Commission the applicability of those requirements. Pittsburgh purchases power and rents electrical facilities from an affiliate. On this account the trustees must either comply with the requirements of Section 13(b) of the Act or litigate before the Commission their applicability. Philadelphia holds bonds and other evidences of indebtedness of Pittsburgh and its underliers. These contractual relationships will, in consequence of the revocation, if valid, of the exemption theretofore afforded by Rule U-49(c), be subjected to the impact of Section 6(a) (2) of the Act, 15 U.S.C. A. § 79f (a) (2), making it unlawful for subsidiaries "to exercise any privilege or right to alter the priorities, preferences, voting power, or other voting rights of the holders of an outstanding security of such company" except in accordance with a declaration made effective by order of the Commission under Section 7 of the Act, 15 U.S.C.A. § 79g. Pittsburgh as a subsidiary and its underliers will also be subject to the provisions of Section 12(c) of the Act, 15 U.S.C.A. § 79l (c), forbidding a subsidiary company "to declare or pay any dividend on any security of such company or to acquire, retire, or redeem any security of such company" except in compliance with the rules and regulations and orders of the Commission. This affects the existing contractual relations of Philadelphia with Pittsburgh and its underliers. Finally, in consequence of the revocation, if valid, of the exemption, limitations will be imposed by the Holding Company Act upon the negotiation of, or entering into, contractual relations between Pittsburgh and its underliers and Philadelphia and its subsidiaries—this by virtue of the provisions of Section 12(g) of the Act, 15 U.S.C.A. § 79l (g), providing in part: "It shall be unlawful . . . for any affiliate . . . of any registered holding company or any subsidiary company thereof . . . to negotiate, enter into, or take any step in the performance of any transaction not otherwise unlawful under this title, with any such company of which it is an affiliate, in contravention of such rules and regulations or orders regarding

reports, accounts, costs, maintenance of competitive conditions, disclosure of interest, duration of contracts, and similar matters as the Commission deems necessary or appropriate to prevent the circumvention of the provisions of this title."

Section 29(g) of the Act, 15 U.S.C.A. § 79z—3, provides criminal penalties for wilful violation of the requirements thereof.

No hearings before the Commission for approval of a plan pursuant to Section 11 (f) of the Act, 15 U.S.C.A. § 79k(f), have been ordered.

On December 5, 1946, the Commission instituted integration proceedings under Section 11(b) (2) of the Act, 15 U.S.C.A. § 79k (b) (2), with respect to Philadelphia and its subsidiaries. After the filing of answers, hearings were begun in those proceedings on February 25, 1947, but have not yet been completed. The conduct of the integration proceedings is not called into question by the petition for review now before this court.

The petition of Philadelphia for review of the Commission's "order" revoking the exemption afforded Pittsburgh by Rule U-49(c) asserts that such "order" is invalid as without statutory authority, as arbitrary, and as having been arrived at under an erroneous burden of proof with respect to the prerequisites for such "order." Particularizing: The petition asserts that the "order" is without statutory authority in that it applies in fact to the single reorganization proceeding involving Pittsburgh and its underlier companies and in that an adequate hearing on the Commission's proposal to adopt an amendment to Rule U-49 (c) was denied Philadelphia. The petition asserts that the "order" is arbitrary: (a) in creating among subsidiaries of a registered holding company a classification without reasonable basis—since the Commission's "order" although general in terms applies in fact only to the single Pittsburgh reorganization proceeding; (b) because issued after Philadelphia, the District Court, the Pennsylvania Commission, and the trustees of Pittsburgh had taken important action, and after Philadelphia and the trustees had expended large sums of money, in reliance upon the exemption; (c) because without statutory basis in that the reorganization plan will deal with the properties of publicly owned companies which are not subsidiaries of a registered

holding company; in that many of the underlier companies of Pittsburgh are not the issuers of obligations guaranteed or assumed by Philadelphia and as a result the Commission's jurisdiction in view of the terms of the revocation of the exemption will attach only to a part of the companies comprised within the reorganization plan; in that the reorganization plan was submitted to the District Court prior to the Commission's "order"; in that Section 11 (f) of the Holding Company Act, 15 U.S. C.A. § 79k(f), has been superseded and repealed by implication by amendments to the Bankruptcy Act; in that the trustees were appointed by the District Court prior to the time when Philadelphia registered with the Commission as a holding company; in that the Commission's "order" is for the purpose of putting the Commission in a quasi-judicial position with respect to the Pittsburgh reorganization plan notwithstanding that the Commission prior to the issuance of the "order" had in proceedings before the Pennsylvania Commission adopted an adversary position with respect to the plan approved by that Commission; and in that the Commission's "order" will improperly multiply regulatory approvals required for the Pittsburgh reorganization plan. The asserted error with respect to burden of proof is in the Commission's imposing upon Philadelphia the burden of demonstrating that the proposed amendment should not be made when, according to the contention of Philadelphia, the Commission should itself sustain the burden of proving the prerequisites to · its proposed "order" of revocation of the exemption afforded by Rule U-49(c).

We do not now pass upon the points thus made in Philadelphia's petition against the validity of the Commission's "order." The only questions now before the court under the Commission's motion to dismiss the petition for review and its objections to a stay order are: I. Is the "order" of the Commission of February 28, 1947, amending Rule U-49(c) reviewable; if the answer to that question is in the affirmative, then II. Should a stay of the Commission's "order" be made pending the disposition of the petition for review.

Philadelphia contends that the Commission's action in amending Rule U-49(c) in the manner above described is reviewable as an "order" under Section 24(a) of the Holding Company Act, 15 U.S.C.A. § 79x (a), and that it is reviewable also under Sections 10(a) and 2(g) of the Administrative Procedure Act, Pub.L.No.404, 79th Cong., 2d Sess., June 11, 1946, 5 U.S.C.A. §§ 1009(a), 1001(g) (Supp.1946). In the view we take it is not necessary to consider the latter.

Section 24(a) of the Holding Company Act provides:

"(a) Any person or party aggrieved by an order issued by the Commission under this title may obtain a review of such order in the circuit court of appeals of the United States within any circuit wherein such person resides or has his principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the entry of such order, a written petition praying that the order of the Commission be modified or set aside in whole or in part · · ··"

In view of the fact that Philadelphia is an owner of stock and a guarantor of obligations and securities of Pittsburgh and its underliers, and in view of the ruling of the Supreme Court in American Power & Light Co. v. Securities and Exchange Commission, 1945, 325 U.S. 385, 65 S.Ct. 1254, 89 L.Ed. 1683, the Commission does not question that Philadelphia is a "person or party aggrieved" by the "order" of the Commission. But it urges, in support of its motion to dismiss the petition for review, that its action in revoking the exemption afforded by Rule U-49(c) is discretionary in character and that the petition presents no substantial question as to action by the Commission in excess of statutory power; that the action of the Commission is of interlocutory character and for that reason not reviewable; and that the action of the Commission is not an "order" subject to review under Section 24(a) of the Act.

For the reasons set forth below we think the Commission's motion to dismiss the petition for review must be denied and a stay granted.

I. In Rochester Telephone Corporation v. United States, 1939, 307 U.S. 125, 59 S. Ct. 754, 83 L.Ed. 1147, the Supreme Court exorcised the doctrine of "negative orders" and carefully delineated and explained the criteria for determining the reviewability of the action of administrative agencies. The Court said that "considerations of policy for which the notions of 'negative' and 'affirmative' orders were introduced [as criteria for reviewability of orders], are completely satisfied by proper application of the combined doctrines of primary jurisdiction and administrative finality. . . ." (307 U.S. at page 142, 59 S.Ct. at page 763, 83 L.Ed. 1147) Under the doctrine of primary jurisdiction "matters which call for technical knowledge . . . must first be passed upon by the . . . [administrative agency] before a court can be invoked." Under the doctrine of administrative finality "the range of issues open to review" involves only "questions affecting constitutional power, statutory authority and the basic prerequisites of proof . . . ." (307 U.S. at pages 139, 140, 59 S.Ct. at pages 761, 762, 83 L.Ed. 1147) In the Rochester Telephone case the Federal Communications Commission had issued orders requiring all telephone carriers subject to the Communications Act of 1934, 48 Stat. 1064, June 19, 1934, as amended by 50 Stat. 189, May 20, 1937, 47 U.S.C.A. § 151 et seq., to file schedules of their charges, copies of contracts with other telephone carriers, information concerning corporate and service history, relations with affiliates, and use of franks and passes. Section 203 (e) of the Communications Act subjected to penalties carriers which failed or refused to comply with such an order. The Rochester Telephone Corporation, failing to respond to the orders, was required by the Commission to show cause why it should not do so. Rochester answered claiming to be outside the requirements of the Act as, within Section 2(b) thereof, a mere connecting carrier not under the control of another. On this issue hearings were held and the Commission through its Telephone Division sustained the findings of its chief examiner and determined that Rochester was under the "control" of the New York Telephone Company. Accordingly the Commission ordered Rochester classified "as subject to all common carrier provisions of the Communications Act of 1934, and, therefore, subject to all orders of the Telephone Division." (307 U. S. at page 128, 59 S.Ct. at page 756, 83 L. Ed. 1147) To review this order Rochester filed a bill under the Urgent Deficiencies Act of October 22, 1913, 28 U.S.C.A. §§ 45, 47a (Supp. 1946), as extended by Section 402(a) of the Federal Communications Act, the terms of which are set forth in the margin.[6] A three-judge district court sustained the Commission's action on the merits and dismissed the bill. On appeal to the Supreme Court by Rochester the Government, although it supported the court's decree on the merits, urged that under the doctrine of "negative orders" the Commission's order was not reviewable. The Court ruled in view of the doctrines of primary jurisdiction and administrative finality that the order was reviewable, although it too sustained the Commission's action on the merits, and accordingly affirmed the decree. The Court held that the order was "not a mere abstract declaration regarding the status of the Rochester under the Communications Act, nor was it a stage in an incomplete process of administrative adjudication. The contested order determining the status of the Rochester necessarily and immediately carried direction of obedience to previously formulated mandatory orders addressed generally to all carriers amenable to the Commission's authority. Into this class of carriers the order under dispute covered the Rochester, and by that

---

[6] "(a) The provisions of the Act of October 22, 1913, c. 32, (38 Stat. 219), relating to the enforcing or setting aside of the orders of the Interstate Commerce Commission, are hereby made applicable to suits to enforce, enjoin, set aside, annul, or suspend any order of the Commission under this chapter (except any order of the Commission granting or refusing an application for a construction permit for a radio station, or for a radio station license, or for renewal of an existing radio station license, or for modification of an existing radio station license, or suspending a radio operator's license), and such suits are hereby authorized to be brought as provided in that Act."

fact, in conjunction with the other orders, made determination of the status of the Rochester a reviewable order of the Commission." (307 U.S. at pages 143, 144, 59 S.Ct. at pages 763, 764, 83 L.Ed. 1147)

We think the "order" of the Securities and Exchange Commission in the instant case comparable so far as its reviewability is concerned to the order of the Federal Communications Commission in the Rochester Telephone case, and that in this case as in that the doctrines of primary jurisdiction and administrative finality are satisfied. Just as the order in the Rochester Telephone case subjected Rochester to the impact of the Communications Act and all pertinent orders issued by the Commission thereunder, so in the instant case the "order" of the Securities and Exchange Commission subjects Pittsburgh and the reorganization proceeding, theretofore exempted therefrom, to the impact of the provisions of the Holding Company Act and to orders of the Commission carrying the same into effect—all as more particularly described in the statement of facts set forth at the outset of this opinion. The order in the Rochester Telephone case determined the status of Rochester as a controlled carrier. Similarly the Commission's "order" here determines the status of Pittsburgh as a subsidiary subject to the Act, Pittsburgh having, before the "order," been by exemption a subsidiary not subject to the Act. In the instant case, moreover, also as explained in the statement of facts above, the "order" of the Commission alters the authority of the District Court in that if the "order" is valid the District Court will no longer be able to approve a reorganization plan as submitted to it by the trustees, subject only to an *advisory* report of the Commission as provided in Section 172 of the Bankruptcy Act, 11 U.S.C.A. § 572. Therefore in the instant case, as in the Rochester Telephone case, the "order" is not "a mere abstract declaration regarding the status" of Pittsburgh and the reorganization proceeding under the Holding Company Act. In issuing its order in the Rochester Telephone case the Communications Commission had applied its technical knowledge respecting telephone carriers and their relationships and had thus exercised its primary jurisdiction. In issuing its "order" in the instant case the Securities and Exchange Commission has applied its technical knowledge pertaining to holding companies, subsidiaries and reorganization and has therefore exercised its primary jurisdiction. The "order" in the instant case, like the order in the Rochester Telephone case, is therefore not "a stage in an incomplete process of administrative adjudication," i. e., it is not merely interlocutory or preliminary. In view of the nature and effect of the orders in the two cases, it would be a distortion of fact to characterize either of them as a mere stage in the administrative process. Such cases therefore as United States v. Los Angeles & S. L. R. Co., 1927, 273 U.S. 299, 47 S.Ct. 413, 71 L.Ed. 651; Myers v. Bethlehem Corp., 1938, 303 U.S. 41, 58 S.Ct. 459, 82 L. Ed. 638; Federal Power Commission v. Edison Company, 1938, 304 U.S. 375, 58 S. Ct. 947, 82 L.Ed. 1523; Macauley v. Waterman S. S. Corp., 1946, 327 U.S. 540, 66 S.Ct. 712, 90 L.Ed. 839; and Federal Power Commission v. Arkansas Power & Light Co., 330 U.S. 802, 67 S.Ct. 963, cited by the Commission in this context and holding that judicial relief is not available for a threatened injury until the prescribed administrative remedy has been exhausted, are distinguishable. That the Arkansas Power case is distinguishable from the Rochester Telephone case is conclusively attested by the Supreme Court's reversal of the former, as decided in this court (1946, 81 U.S. App.D.C. 178, 156 F.2d 821). The distinction between the Rochester Telephone case and the instant case on the one hand and the Arkansas Power case on the other lies in the fact that in the Arkansas Power case the action of the Federal Power Commission which was sought to be reviewed merely directed the Power Company to show cause why its accounts should not conform to recommendations of the Commission's staff and fixed a hearing for that purpose. No determination of status was made. The Power Company was admittedly a public utility and a licensee within the meaning of the Federal Power Act and subject to the provisions thereof.

The petition for review in the instant case is, moreover, as was the bill in the Rochester Telephone case, properly within the doctrine of administrative finality. It seeks not to substitute the judgment of the court for that of the Commission but only determination by the court of substantial questions as to the validity of the Commission's "order" in terms of its constitutional and statutory foundation and its satisfaction of the requirements of law in respect of burden of proof as to the requisites of the proposed amendatory "order" of the Commission. This is clear from the statement set forth above of the attack which Philadelphia in the petition for review makes on the Commission's "order."

█ In this connection comment may be made upon a contention of the Commission that Philadelphia by attacking the "order" on constitutional grounds as an arbitrary classification among subsidiaries because only a single reorganization proceeding is affected, "attempts to create a semblance of a legal issue" which is "merely colorable" and therefore presents "no substantial question for judicial review." This contention is not supportable. It is rested upon such cases as West Coast Hotel Company v. Parrish, 1937, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703, 108 A.L.R. 1330; National Labor Relations Board v. Jones & Laughlin Steel Corp., 1937, 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; and Minnesota ex rel. Pearson v. Probate Court, 1940, 309 U.S. 270, 60 S.Ct. 523, 84 L.Ed. 744, 126 A.L.R. 530. The theory of the decisions in those cases is, as said in West Coast Hotel Company v. Parrish, that the "legislative authority, acting within its proper field, is not bound to extend its regulation to all cases which it might possibly reach. The legislature 'is free to recognize degrees of harm and it may confine its restrictions to those classes of cases where the need is deemed to be clearest.'" 300 U.S. at page 400, 57 S.Ct. at page 585, 81 L.Ed. 703, 108 A.L.R. 1330. We do not assume now to rule upon the merit of Philadelphia's attack in view of these cases. That will be dealt with in the review proceeding itself. But it is proper to comment now that the cases cited involve situations in which all of the

members of a particular group made the subject of legislation under scrutiny were within its impact, although not all members of the class within which the group was included were subject to the legislation; whereas the complaint of Philadelphia in the instant case in the respect immediately under discussion is that the revocation of the exemption afforded by Rule U-49(c) applies and was intended to apply, in actuality, neither to a class nor to a group but to a single reorganization. Hence the analogy between the cases cited and the instant case is not so apt as to warrant a conclusion that the attack of Philadelphia as above defined is so insubstantial as to be merely colorable and therefore not justiciable for review.

We think no proper distinction can be drawn between the Rochester Telephone case and the instant case because in the former the review sought was before a three-judge court under the Urgent Deficiencies Act, as extended by Section 402(a) of the Communications Act of 1934, and in the instant case under Section 24(a) of the Holding Company Act. It is not the nature of the judicial tribunal nor of the statutory route thereto which determines the reviewability of an order of an administrative agency. The test lies in the two requisites of primary jurisdiction and administrative finality laid down and explained in the Rochester Telephone case.

█ With respect to the contention of the Commission that its action in amending Rule U-49(c) is not an "order" subject to review under Section 24(a) of the Act: In the memorandum of views of the Commission accompanying its action it characterized the same as "Adoption of Rule Amending Rule U-49(c)." But the Commission omitted to label its amendatory action in the text thereof; and it purported to act under Sections 3(d), 20(a) and 20(c) of the Act which mention both "rules and regulations" and "orders." But neither the presence nor the absence of a label is controlling. As said in Columbia Broadcasting System v. United States, 1942, 316 U.S. 407, 416, 62 S.Ct. 1194, 86 L. Ed. 1563, "The particular label placed upon it [the action of the Federal Communications Commission] by the Commission is

not necessarily conclusive, for it is the substance of what the Commission has purported to do and has done which is decisive." The amendatory proviso itself, as will be noted from its text, is in general terms. It refers "to any subsidiary company which is the subject of reorganization proceedings . . . where such subsidiary company . . . is the issuer of any securities, or is the obligor on any obligations, which have been guaranteed or assumed by any registered holding company." But not even the fact that the action of an administrative agency is phrased to apply generally, or may indeed have general application, is necessarily conclusive that its action is not subject to review as an "order" under the Urgent Deficiencies Act as extended by the Communications Act, or under Section 24(a) of the Holding Company Act. If in its impact a "rule or regulation" applies specifically and affects or determines the rights of a particular person or corporation, then the action of the agency in promulgating it is reviewable even though the "rule or regulation" is not directed in terms to any particular person or corporation. This is evidenced by the ruling of the Supreme Court in the Columbia System case just cited. There the Federal Communications Commission by an "order" promulgated regulations purporting to require the Commission to refuse to grant a license to any broadcasting station which entered into chain broadcasting contracts with any broadcasting network organization. The Commission had acted, as the Court said in its opinion, "in the avowed exercise of its rule-making power." The Columbia System filed a bill in equity before a three-judge court under the Urgent Deficiencies Act, as extended by Section 402(a) of the Communications Act of 1934, to set aside this order of the Commission, alleging that 115 licensed stations had chain broadcasting contracts with the Columbia System and that by force of the regulations such stations faced the loss of their licenses if they performed or continued in force or renewed any of the existing chain contracts. The three-judge court dismissed the bill for want of jurisdiction. On appeal the Supreme Court held that the questions raised by the motion to dismiss were whether the Commission's order was an "order" reviewable under Section 402(a) and if so whether the bill stated a cause of action in equity. The Court held that the order was one of reviewable character and that the bill did state a cause of action. The Court said that the Columbia System's standing to maintain the review was unaffected by the fact that the regulations were not directed to it and did not in terms compel action by it or impose penalties upon it because of its action or failure to act. As appears from the statement of facts at the outset of this opinion the impact of the revocatory action of the Commission in the instant case is directed to and affects only Pittsburgh.

While, as said in the Columbia System case, the particular label placed upon its action by a commission is not necessarily conclusive as to its reviewability as an "order," the fact that a commission deliberately provides that its action of a given type shall be by order is, we think, entitled to great weight in determining reviewability. In its Rule U-100(b), promulgated prior to the amendatory action of February 28, 1947, now sought to be reviewed, the Securities and Exchange Commission provided that:

"(b) Orders withdrawing exemption.—Any unexecuted transaction which is within the exemption provided in any rule from the requirements of any provision of the Act or of the rules, may nevertheless be subjected thereto *by order, after notice and opportunity for hearing*, if it appears to the Commission that the withdrawal of such exemption as applied to such transaction would be appropriate in the public interest or the interest of investors or consumers. The Commission may by such notice suspend the applicability of any such exemption to any transaction pending final determination. [Italics supplied] [General Rules and Regulations under the Public Utility Holding Company Act of 1935, as amended to and including January 1, 1946]"

While not even this provision by the Commission that the revocation of exemptions will be made by *"order,* after notice and opportunity for hearing" (italics supplied) would be necessarily conclusive that particular amendatory action thereafter

taken was an "order" within the meaning of Section 24(a) of the Act if the action, in the view of the court in which review was sought, was in substance in the nature of a rule or regulation and not in the nature of an order, nevertheless, and especially in view of the distinction many times evidenced in the Act between rules and regulations on the one hand and orders on the other, this considered rule of the Commission is highly persuasive. It is to be presumed, in the absence of rebutting considerations, that in amending Rule U-49(c) the Commission followed its own directions as stated in Rule U-100(b). It is, moreover, highly significant that the Commission in that rule provided that the withdrawal of exemptions should be "by order, *after notice and opportunity for hearing.*" (Italics supplied) This is recognition of the adjudicatory quality of such action and of its finality. Clearly the Commission itself was of the view that fair play in administrative action requires that before an exemption once granted should be withdrawn in respect of an unexecuted transaction the affected parties should have notice and be heard. The Pittsburgh reorganization is an unexecuted transaction, clearly falling as such within the ambit of Rule U-100(b). In view of this and of the plain terms of that rule, it is difficult indeed to give weight to the contention of the Commission in the instant case that its revocatory action in amending Rule U-49 (c) is not reviewable because it is a "rule or regulation" rather than an "order."

The Commission contends that the review sought by Philadelphia is in effect an attack upon the policy of Congress, evidenced in Section 11(f) of the Holding Company Act, to submit companies in bankruptcy reorganization to the requirements of both that Act and the Bankruptcy Act. The Commission asserts also that the petition for review attacks the Commission's power under Section 20(a) of the Holding Company Act to amend and rescind rules, and seeks to compel the grant of an exemption broader than that which the Commission has deemed necessary or appropriate in accordance with the standards of Section 3(d) whereunder the Commission "may" grant exemptions to subsidiaries of registered holding companies from particular sections of the Act only "if and to the extent that it deems the exemption necessary or appropriate in the public interest or for the protection of investors or consumers and not contrary to the purposes of this title." We do not understand the petition to attack either the policy of Congress or the power of the Commission to amend and rescind rules and to grant exemptions. What the petition seeks to review, as has been pointed out above, is the exercise of the Commission's power in the particular circumstances of this case in view of constitutional and statutory requirements and the basic prerequisites of proof. As said in Intermountain Rate Cases, 1914, 234 U.S. 476, 491, 34 S.Ct. 986, 58 L. Ed. 1408, the ruling in which was approved in the Rochester Telephone case, "an investiture of a public body with discretion does not imply the right to abuse but on the contrary carries with it as a necessary incident the command that the limits of a sound discretion be not transcended which by necessary implication carries with it the existence of judicial power to correct wrongs done by such excess." Whether in the issuance of the revocatory order in the instant case the limits of a sound discretion were transcended we do not now assume to say. That question will be before us on the review itself of the validity of the order.

■ Finally, the Commission "emphasizes the anomalous result which would flow from so interpreting Section 24(a) as to confer jurisdiction over the petition to review" in that "the instant petition seeks to have this Court resolve an alleged problem of integrating the functions of the Commission under the Holding Company Act with the Chapter X responsibilities of a district court outside of the District of Columbia . . . ." The complaint of the Commission in this respect is really against the policy of Congress expressed in Section 24(a) to place jurisdiction to review orders of the Commission concurrently in any United States Circuit Court of Appeals, including the United States Court of Appeals for the District of Columbia. If the petition for review under the facts stated therein seeks relief from action

of the Commission which, under Section 24(a) of the Act and pertinent judicial decisions, is the proper subject·of review, this court is bound to exercise the jurisdiction conferred upon it by Congress.

We conclude that the action of the Commission in revoking the exemption afforded Pittsburgh by Rule U-49(c) is reviewable and that the motion to dismiss the petition for review must therefore be denied.

II. In respect of the stay of the Commission's order, prayed for in the petition for review and sought also by a separate motion filed by Philadelphia: This court has inherent power to stay administrative orders. Scripps-Howard Radio v. Federal Communications Commission, 1942, 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229. This power is recognized, in reference to the Securities and Exchange Commission, by Section 24(b) of the Holding Company Act, 15 U.S.C.A. § 79x(b), providing that "The commencement of proceedings under subsection (a) shall not, unless specifically ordered by the court, operate as a stay of the Commission's order."

The considerations in favor of staying, pending review, the order of the Commission strongly outweigh the contrary considerations. If the order shall be set aside on the review and a stay has not been issued, Pittsburgh and the reorganization will, for the reasons set forth in the statement of facts at the outset of this opinion, have been subjected not only to the operation of Section 11(f) of the Holding Company Act, but also to the operation of all other provisions of the Act applicable to subsidiaries of registered holding companies. The trustees will accordingly not only have been obliged to participate in hearings under Section 11(f) for the approval of a reorganization plan before submission to the District Court, but also will have been obliged to satisfy in the course of the administration of the Debtor's estate, the requirements of such other provisions

of the Act. The trustees, that is to say, will have been obliged on the one hand either to conform to such provisions or to make applications to the Commission for approval ·of proposed action,· or, on the other hand, to litigate before the Commission questions of the applicability of such provisions. Thereby the time and effort of the trustees will have been expended and expenses incurred; and the time and effort of the Commission will also have been called upon. And, if the Commission's order is set aside, all of this will have been fruitless and confusion will result. The Commission's approval or disapproval of applications may have to be withdrawn; orders and declarations of the Commission may have to be set aside.

On the contrary, if the order of the Commission shall be sustained in the review, the only untoward result of the issuance of a stay will be that the Commission will have been delayed, during the pendency of the review, in the institution of Section 11(f) hearings for the approval of a reorganization plan and of possible correlation—on account of the guarantee relationship existing between Philadelphia and Pittsburgh and its underliers—of such hearings with integration proceedings under Section 11(b) of the Act in respect of Philadelphia and its subsidiaries. But this delay will have been accompanied by no expenditure of time or effort or outlay of expense on the part of either trustees or the Commission. Moreover, the probable period of time to be occupied by the review and its disposition will be, relatively, but a minor extension of the already extended reorganization proceedings.

Finally, we think the petition for review has prima facie merit.

Accordingly, the prayer and motion for a stay will be granted.

Motion to dismiss the petition for review denied.

Prayer and motion for a stay granted.