**PHILADELPHIA CO. v. SECURITIES AND EXCHANGE COMMISSION (CITY OF PITTSBURGH, Intervener).**

No. 9513.

United States Court of Appeals
District of Columbia Circuit.

Argued April 12, 1948.

Decided Oct. 28, 1948.

Judgment Vacated May 16, 1949.

See 69 S.Ct. 1047.

Mr. Thomas J. Munsch, Jr., with whom Messrs. C. Elmer Bown, Ellsworth C. Alvord, and Floyd F. Toomey, who entered appearances, and Mr. Philip A. Fleger, were on the brief, for petitioner. Mr. Thomas E. Harris also entered an appearance for petitioner.

Mr. Roger S. Foster, Solicitor, with whom Messrs. David Ferber, Special Counsel, Paul S. Davis, Special Counsel, Public Utilities Division, and Howard S. Guttmann, of the Securities and Exchange Commission, were on the brief, for respondent.

Mr. Charles S. Rhyne for intervener, City of Pittsburgh.

Before STEPHENS, Chief Justice, and CLARK and WILBUR K. MILLER, Associate Justices.

STEPHENS, Chief Justice.

This case is before the court under a petition filed by the Philadelphia Company, a Pennsylvania corporation, hereafter referred to as Philadelphia, under Section 24 (a) of the Public Utility Holding Company Act of 1935, 15 U.S.C.A. § 79x(a), here-

after sometimes referred to as the Act, to review an order of the Securities and Exchange Commission (hereafter sometimes referred to as the Commission) of February 28, 1947, revoking an exemption from the application of the Act theretofore granted by the Commission to a subsidiary of Philadelphia. The Commission moved to dismiss the petition upon the grounds that its action in revoking the exemption was discretionary in character and that the petition presented no substantial question as to action by the Commission in excess of statutory authority, that the action of the Commission was of interlocutory character and for that reason not reviewable, and that the action of the Commission was not an "order" subject to review under Section 24 (a) of the Act. The motion was denied by this court on October 8, 1947. Philadelphia Co. v. Securities and Exchange Commission, 1947, 82 U.S.App.D.C. 335, 164 F.2d 889, certiorari denied, 1948, 333 U.S. 828, 68 S.Ct. 452. The Commission did not question in its motion to dismiss and does not now question that Philadelphia is a "person or party aggrieved" by the order under review, within the meaning of that phrase in Section 24(a) of the Act. This court stayed, pending disposition of the petition for review, the Commission's order revoking the exemption. The petition, which is now before the court, questions the validity of the order and prays that it be set aside as invalid for reasons particularized below.

The facts relevant to the question of the validity of the Commission's order revoking the exemption are in the large not in dispute. In substantial part they are set forth in the opinion of this court on the motion to dismiss. Reference should be made to that opinion for further detail than it is here necessary to state. For the purpose of the present proceeding the facts may be stated as follows:

■ Philadelphia, a registered public utility holding company under the Act, is the owner of the stock of gas, electric and street railway subsidiaries. One of these is the Pittsburgh Railways Company, a Pennsylvania corporation, hereafter sometimes called Pittsburgh, or the Debtor. Until May 10, 1938, Pittsburgh operated, as a uni-

fied street railway system in Pittsburgh, Pennsylvania, and vicinity, its own properties and also, pursuant to a system of leases, operating agreements and stock ownership, the properties of fifty-three so-called "underlier" companies. Of the latter ten are publicly controlled and are not subsidiaries of any registered holding company. Philadelphia owns all of the stock of Pittsburgh and of certain of its underlier companies, and is also a large creditor of Pittsburgh and is a guarantor of obligations substantial in amount of Pittsburgh and of certain of its subsidiaries and underliers. In view of Philadelphia's ownership of Pittsburgh's stock, Pittsburgh is a "subsidiary" within Section 2(a) (8) of the Act, 15 U.S.C.A. § 79b(a) (8). Not being an "electric utility company" or a "gas utility company," it is not a "public utility company" within the meaning of Section 2(a) (5) of the Act, 15 U.S.C.A. § 79b(a) (5), but it is nevertheless, as a "non-utility subsidiary" of a registered holding company, subject to the requirements of the Act unless in some manner exempted therefrom by action of the Commission.

On May 10, 1938, Pittsburgh filed a voluntary petition for reorganization under Section 77B of the Bankruptcy Act, 48 Stat. 912 (1934), as amended by 49 Stat. 664 (1935) and 49 Stat. 965 (1935), in the United States District Court for the Western District of Pennsylvania, hereafter referred to as the District Court. Trustees appointed by the District Court on June 14 have since that date operated the properties which were operated by Pittsburgh before the initiation of the bankruptcy proceedings. In the early stages of the reorganization Pittsburgh and its underliers were the subject of exemptions granted by the Commission under Section 3(d) of the Act, 15 U.S.C.A. § 79c(d), providing that "The Commission may, by rules and regulations, conditionally or unconditionally exempt any specified class or classes of persons from the obligations, duties, or liabilities imposed upon such persons as subsidiary companies or affiliates under any provision or provisions of this title . . . ." Exemption prior to April 1, 1941, was by virtue of the Commission's Rule U-3D-5 which relieved from the operation of most of the provisions of

the Act all subsidiaries of registered holding companies which were not gas or electric utility companies, investment companies, service companies, or holding companies thereof. On April 1, 1941, the Commission by Rule U-49 narrowed the scope of the Rule U-3D-5 exemption but nevertheless continued exemption from the otherwise applicable requirements of the Act of certain transactions by subsidiaries of registered holding companies if they were neither electric nor gas utility companies and were being reorganized in a United States court, and if the Commission had filed in such court notice of appearance pursuant to Section 208 of Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 608. The continued exemption was applicable to the Pittsburgh reorganization because the Commission had, pursuant to that section, filed in the District Court notice of appearance in the reorganization proceeding. Paragraph *(c)* of Rule U-49 made that a condition of the exemption.

In view of the exemptions successively afforded by Rules U-3D-5 and U-49*(c)*, as above explained, the following steps were taken in the Pittsburgh reorganization proceeding: The trustees prepared a plan of reorganization covering not only Pittsburgh itself but also forty-nine of its underlier companies, including the ten which were publicly controlled and were not subsidiaries of any registered holding company. The plan contemplated compliance with the requirements of Section 172 of the Bankruptcy Act, 11 U.S.C.A. § 572, providing that before approval of any plan the district judge may, if the scheduled indebtedness of the debtor does not exceed $3,000,000, and shall, if such indebtedness exceeds $3,000,000, "submit to the Securities and Exchange Commission for examination and report the plan or plans which the judge regards as worthy of consideration," and that

*"Such report shall be advisory only."* (Italics supplied) The plan, in view of the exemptions, contained no provision for submission to the Commission under Section 11(f) of the Holding Company Act, 15 U.S. C.A. § 79k(f), providing that in any proceeding of a court of the United States in which a receiver or trustee is appointed for a registered holding company or any subsidiary thereof a reorganization plan for a registered holding company or any subsidiary company thereof *"shall not become effective unless such plan shall have been approved by the Commission after opportunity for hearing prior to its submission to the court. . . ."* (Italics supplied.) The plan was, however, pursuant to Section 178 of the Bankruptcy Act, 11 U.S.C.A. § 578, submitted to the Pennsylvania Public Utility Commission, hereafter referred to as the Pennsylvania Commission, and, after a hearing, was on January 12, 1942, approved by it.[1] As approved by the Pennsylvania Commission the plan was filed with the District Court on March 17, 1942, without prior submission to the Securities and Exchange Commission. Litigation then ensued in the District Court on the question of that court's jurisdiction with respect to Pittsburgh's underlier companies. This culminated in a decision by the United States Court of Appeals for the Third Circuit (In re Pittsburgh Rys. Co., 1946, 155 F.2d 477, certiorari denied, 1946, 329 U.S. 731, 67 S.Ct. 89, 90, 91 L.Ed. 632) holding that the District Court had jurisdiction over the Pittsburgh transportation system as a unit, including the underliers, notwithstanding that some of them were not subsidiaries of any registered holding company and notwithstanding that some of them were (according to the opinion in that case) solvent.[2] The routine administration of the Debtor's estate proceeded, in view of the exemptions afforded by Rules U-3D-5 and

---

[1] It is asserted in the brief of the Securities and Exchange Commission as respondent in the instant case, and not denied in the reply brief of Philadelphia, that the Pennsylvania Commission's approval of the plan extended only to the proposed security structure, the equity of allocations not being passed upon. We assume this to be the fact for the purposes of this opinion.

[2] It is asserted in the petition for review, and was therefore, in consideration of the motion to dismiss, assumed as true, that in the litigation in the District Court and the United States Court of Appeals for the Third Circuit neither the courts nor the parties took into consideration the possibility of assertion by the Commission of jurisdiction over Pittsburgh and its underlier companies. But in the

U-49*(c)*, without reference. to the jurisdiction of the Commission, except as recognized by Section 172 of the Bankruptcy Act, providing, as above stated, for an advisory report, and proceeded without the necessity of securing Commission approval by applications to it under the Holding Company Act.

It was in this posture of the reorganization in the District Court that the Commission. made the revocation of exemption which is the subject of the petition for review. It purported to act under Section 3(d) of the Act, printed above, and also under Section 20(a) of the Act, 15 U.S.C.A. § 79t(a), to the effect that "The Commission shall have authority from time to time to make, issue, amend, and rescind such rules and regulations and such orders as it may deem necessary or appropriate to carry out the provisions of this title . . .," and also under Section 20(c) of the Act, 15 U.S. C.A. § 79t(c), providing that "The rules and regulations of the Commission shall be effective upon publication in the manner which the Commission shall prescribe. For the purpose of its rules, regulations, or orders the Commission may classify persons and matters within its jurisdiction and prescribe different requirements for different classes of persons or matters. Orders of the Commission under this title shall be issued only after opportunity for hearing." The Commission first published, on November 25, 1946, as Holding Company Release No. 7011, "Notice [dated November 21] of Proposed Rule Amending Rule U-49*(c)* Under the Public Utility Holding Company Act of 1935." The notice *inter alia* contained the following:

The course of the Commission's experience under Rule U-49 (c) has indicated that there are certain circumstances under which the continued existence of this exemption may not be in the public interest or the interests. of investors or consumers and may hamper the Commission in the discharge of its responsibilities under Section 11 (b) of the Act as to registered holding companies. There exist situations in which the security structures of registered holding companies and their subsidiaries are entangled in such a manner as to make it necessary for the Commission, in or-

der properly to perform its statutory responsibilities with respect to the corporate structure of a holding company, to exercise jurisdiction over reorganization plans and other transactions by its subsidiary companies although such subsidiaries may not be electric or gas utility companies.

The notice then stated that the proposed amendment would provide for the addition of substantially the following language at the end of paragraph *(c)* of the present Rule U-49:

Provided further, that this paragraph shall be inapplicable to any subsidiary company which is the subject of reorganization proceedings (or any subsidiary of such subsidiary company within the meaning of Section 106 (13) of said Chapter X or of Section 2 (a) (8) of the Public Utility Holding Company Act), where such subsidiary company, or any subsidiary thereof, is the issuer of any securities, or is the obligor on any obligations, which have been guaranteed or assumed by any registered holding company.

The notice further stated that all interested persons might "submit data, views, and comments in writing to the Securities and Exchange Commission . . . on or before December 9, 1946," and that "In the event that any interested person, in connection with the submission of such data, views, or comments, on or prior to the aforesaid date, requests that oral argument be held with respect to such proposed amendment, opportunity for such oral argument will be afforded before the Commission on December 16, 1946 . . . ." The date for submission of data, views and comments was, by the Commission's "Supplementary Notice [dated December 5, 1946] Concerning Proposed Rule Amending Rule U-49 *(c)* Under the Public Utility Holding Company Act of 1935," extended to December 16, and the date for oral argument, to December 20.

On November 29, 1946, Philadelphia through a letter addressed by its counsel to the Commission stated its desire to present data, views and comments and oral argument, and further inquired as to the identity of any companies, other than those included among Pittsburgh and its underlier companies, which were affected by the proposed amendment, and as to the nature of the Commission's "experience" referred to in

brief of the Commission in the instant case it is asserted that this is without record support and not susceptible of

proof. We accordingly disregard it for the purposes of this opinion.

the notice, and as to the identity of the "situations" in which security structures of holding companies and subsidiaries were entangled as stated in the notice. On December 6 the Commission replied by letter that so far as it was then advised the proposed amendment to Rule U-49 *(c)* "would be applicable primarily to Pittsburgh Railways Company, Pittsburgh Motor Coach Company and any other subsidiaries of your client which may be parties in the pending Chapter X reorganization proceedings." The Commission stated further that the reference in the notice to its experience "concerns primarily the situation which has been presented by Philadelphia Company and its subsidiaries, including particularly Pittsburgh Railways Company and the latter's subsidiaries." The letter of the Commission made no reference to any other "situations" in which the security structures of holding company subsidiaries were "entangled." Philadelphia by letter of December 10 written by its counsel to the Commission stated that it was assumed that it was the intent of the Commission to advise that there were no companies other than those in the Pittsburgh group affected by the action under consideration and that it was assumed also that the Commission's "experience" and the "situations" to which the Commission had referred concerned only the situation presented by Philadelphia and its subsidiaries, including particularly Pittsburgh and the latter's subsidiaries. Philadelphia's letter further requested information as to any experience which might secondarily affect any other companies. No further information was furnished by the Commission in response to this request. In its letter of December 10 Philadelphia also requested a hearing at which evidence might be presented preceding oral argument. Specifically it requested that "a hearing be held . . . and that such hearing be so conducted as to accomplish the following purposes: 1. That all parties may be apprised of the facts upon which any decision to adopt the proposed amendment to Rule U-49 is predicated, and that cross-examination of witnesses be permitted. 2. That rebuttal evidence may be introduced by any interested party. 3. That each party may be apprised of the data, views, comments and evidence of parties other than itself. 4. That a stenographic record may be made of the evidence in support of, and in opposition to, the proposed amendment." By telegram of December 13, the Commission replied advising that ruling on the "request for taking evidence should be deferred until after submission written data and oral argument." The requested hearing was, as will appear below, ultimately denied, that is to say, the "hearing" conducted by the Commission did not accomplish the purposes above enumerated. The Commission further stated in the telegram that its notice of November 21 set forth generally the nature and purpose of the proposed rule and added that "for specific discussion of problems thereunder regarding Pittsburgh Railways and associate companies you are again referred to notice instituting proceedings under Section 11 (b) (2) regarding Philadelphia Company." That notice is not included in the material certified to this court by the Commission in the instant proceeding. In the same telegram of December 13 the Commission invited Philadelphia "to submit, not later than opening of oral argument, affidavit specifying offer of proof you desire considered in connection your request for presentation evidence." Statement of data, views and comments was submitted to the Commission by Philadelphia December 16. This renewed the request for a hearing above alluded to. Offer of proof was filed in behalf of Philadelphia on December 20, the date of the oral argument. Therein Philadelphia referred to its request for a hearing prior to oral argument and offered to prove all of the factual averments set forth in the statement of data, views and comments submitted to the Commission on December 16. It offered also:

. . . to prove that a plan of reorganization for Pittsburgh Railways Company was submitted by the Trustee of such Company for approval to the Pennsylvania Public Utility Commission, pursuant to Section 178 of the Bankruptcy Act; that extensive hearings thereon were conducted by said Utility Commission; that the plan was approved by said Commission; and that the Securities and Exchange Commission actively participated in the hearings and arguments before the Pennsylvania Public Utility Commission as a party

thereto and took an adversary position in respect to the said plan.

And finally in the offer of proof Philadelphia stated that:

. . . it is impossible in advance of such [requested] hearing to set forth a complete statement of the proof which might be submitted at a hearing of the type requested, because it is the position of Philadelphia Company, pursuant to advice of counsel, that at such hearing the proponent of the proposed amendment would have the burden of proof, and until such burden of proof has been sustained, it is impossible to describe all of the evidence which might be elicited on cross-examination, or which might be submitted by way of rebuttal.

The Commission proceeded with its announced program of receiving statements, data, views and comments and of hearing oral argument thereon. The data, views and comments so far as shown by the record certified to this court consisted of statements by persons interested in the Pittsburgh reorganization proceedings including the following: a statement in behalf of Christian A. Johnson and Kent Cochran, stockholders and directors of Standard Gas & Electric Company, favoring the proposed amendment of Rule U-49; a statement in behalf of Philadelphia opposing the proposed amendment; a statement of the views and comments of the District Court trustee (W. D. George) in relation to the effect of the amendment upon the reorganization proceedings of Pittsburgh and its underliers pending in the District Court; a statement in behalf of the city of Pittsburgh in favor of the proposed amendment; a statement filed by a law firm in the city of Pittsburgh urging that "if the Rule amending Rule U-49 (c) is to be adopted, reference therein to subsidiary within the meaning of Section 106 (13) of Chapter X of the Bankruptcy Act should be deleted; otherwise, it would appear that the Commission proposed to make applicable to such subsidiaries the provisions of the Public Utility Holding Company Act"; and a statement in behalf of a group of public security holders of Pittsburgh suggesting various amendments to the proposed amendment of Rule U-49 (c). The only statements by the Commission made available for inspection and included in the record certified to this court were in its original notice instituting the proceedings, its supplementary notice, and its letter and telegram above referred to. Oral argument was held on December 20 before three members of the Commission. An oral statement was made by counsel for the Commission which in substance paraphrased the language of the notice of the proposed amendment and included a discussion of objections raised by Philadelphia. An oral statement was made in behalf of Philadelphia in which counsel urged that hardship would be imposed by the Commission's procedure and called attention to the fact that the Commission had failed to specify the experience upon which it relied for the situations to which it referred in its notice. Counsel for Philadelphia also outlined the objections made in its statement of data, views and comments and filed at this time the sworn offer of proof above described. A statement was made by counsel for the District Court trustee. A statement was made by counsel for the group of Pittsburgh security holders, above referred to, asking that the Pittsburgh reorganization be expedited. No evidence was introduced, no witnesses were called or were permitted to be called to testify. The Commission did not assume the burden of proof. Rather, as appears, it required Philadelphia by the submission of data, views and comments and by the making of argument to attempt to persuade the Commission that Rule U-49 (c) should not be amended as proposed by the Commission, i.e., that the exemption theretofore afforded Pittsburgh by Rule U-49 (c) should not be revoked. After oral argument the Commission on February 28, 1947, announced the amendment of Rule U-49 (c) in the language printed in the Commission's notice above set forth. The petition for review of the Commission's action was filed March 22, 1947.

Since as above stated Philadelphia is the guarantor of obligations of Pittsburgh and certain of its subsidiaries and underlier companies, the effect of the amendment, if valid, is to revoke the exemption theretofore granted Pittsburgh by Rule U-49(c). In consequence of the revocation, if valid, the Pittsburgh reorganization is subjected to the impact of Section 11 of the Holding Company Act. As a result the District

Court will no longer have authority to approve a reorganization plan as submitted to it by the trustees, subject only to an *advisory report* of the Commission as provided in Section 172 of the Bankruptcy Act. As appears from the terms of Section 11 (f) of the Holding Company Act set forth above the plan cannot be made effective by the District Court unless it has been *approved* by the Commission after opportunity for hearing prior to its submission to the court. The revocation of the exemption thus operates in effect as a *pro tanto* injunction or restraint upon the proceedings, and as a diminution of the authority, of the District Court. Not only will the Pittsburgh reorganization be brought within the ambit of Section 11 (f), but also as a result of the revocation of the exemption, if valid, the reorganization and the administration of the Debtor's estate will, or may, be subject to the operation of all provisions of the Holding Company Act relating to subsidiaries of registered holding companies. Such provisions, if apparently applicable to particular transactions occurring or relationships existing in the course of the reorganization, must either be complied with or their applicability litigated before the Commission. In consequence the action of the Commission will affect the contractual relations of Philadelphia and its affiliates on the one hand with Pittsburgh and its underliers on the other.

The revocation, if valid, of the exemption theretofore afforded by Rule U-49 *(c)* concededly presently affects the Pittsburgh reorganization alone. The Commission said in its "Memorandum of Views of the Commission Accompanying Adoption of Rule Amending Rule U-49*(c)*": " . . . As far as we are aware that exemptive rule [Rule U-49 *(c)* prior to the amendment] now affects only reorganization proceedings of Pittsburgh Railways Company and its related companies and one other group of companies, commonly called the Inland group. The proposed amendment does not affect the Inland group which has no guarantee relationships with its parents. . . ."

In the certificate of transcript filed by the Commission on this review the Commission certified to this court the transcript of its "public file" "consisting of the Commission's notice [of the proposed amendment of Rule U-49 *(c)*] and the written data, views or arguments presented, together with the oral arguments . . . ." In so doing the Commission stated:

It being a requirement of Section 24 (a) of the Act that "the Commission shall certify and file in the Court a transcript of the record upon which the order complained of was entered"; and

The Commission having heretofore advised this Court that said action was not entered upon a "record" of a hearing upon which evidence was taken but followed procedures which the Commission deemed appropriate for rule making under the Public Utility Holding Company Act and under Section 4 of the Administrative Procedure Act where the governing statute does not require such rule making to be made on a record after opportunity for agency hearing; and

The Commission desiring to preserve its objections to the jurisdiction of this Court to entertain said petition for review, including its contentions that the action of the Commission complained of is not an "order" within the meaning of Section 24 (a) of the Public Utility Holding Company Act and that the Commission did not and is not required to proceed on the basis of a record appropriate for adjudicatory proceedings; and

The Commission having nevertheless maintained a public file of the proceedings held before it with reference to the promulgation of the amendment to Rule U-49 (c) pursuant to the Public Utility Holding Company Act, consisting of the Commission's notice and the written data, views or arguments presented, together with the oral arguments, being all of the relevant matter presented in accordance with Section 4 (b) of the Administrative Procedure Act;

The Commission hereby certifies the transcript of said public file as a transcript of the record upon which the action or "order" of the Commission complained of was entered . . . ..

The Supreme Court ruled in Rochester Telephone Corporation v. United States, 1939, 307 U.S. 125, 59 S.Ct. 754, 83 L.Ed. 1147, that under the doctrine of administrative finality "the range of issues open to review" by the courts of the action of an administrative agency—the Securities and Exchange Commission is such an agency—involves only "questions affecting constitutional power, statutory authority and the basic prerequisites of proof . . . ." (307 U.S. at 139-40, 59 S.Ct. at 761, 762)

The petition of Philadelphia for review of the Commission's order revoking the exemption afforded Pittsburgh by Rule U-49 *(c)* asserts that such "order" is invalid as without statutory authority, as arbitrary, and as having been arrived at under an erroneous burden of proof with respect to the prerequisites for such order. Particularizing: The petition asserts that the order is without statutory authority in that it applies in fact to the single reorganization proceeding involving Pittsburgh and its underlier companies and in that an adequate hearing on the Commission's proposal to adopt an amendment to·Rule U-49 *(c)* was denied Philadelphia. The petition asserts that the order is arbitrary: (a) in creating among subsidiaries of a· registered holding company a classification without reasonable basis—since the Commission's order although general in terms applies in fact only to the single Pittsburgh reorganization proceeding; (b) because issued after Philadelphia, the District·Court, the Pennsylvania Commission, and the trustees of Pittsburgh had taken important action, and after Philadelphia and the trustees had expended large sums of money, in reliance upon the exemption; (c) because without statutory basis in that the reorganization plan will deal with the properties of publicly owned companies which·are not subsidiaries of a registered holding company; in that many of the underlier companies of Pittsburgh are not the issuers of obligations guaranteed or assumed by Philadelphia and as a result the Commission's jurisdiction, in view of the terms of the revocation of the exemption, will attach only to a part of the companies comprised within the· reorganization plan; ·in that the reorganization plan was submitted to the District Court prior to the Commission's order; in that Section 11 (f) of the Holding Company Act has been superseded and repealed by implication by amendments to the Bankruptcy Act; in that the trustees were appointed by the District Court prior to the time when Philadelphia registered with the Commission as a holding company; in that the Commission's order is for the purpose of putting the Commission in a quasi-judicial position with respect to the Pittsburgh reorganization plan notwithstanding that the Commission prior to the issuance of the order had in proceedings before the Pennsylvania Commission adopted an adversary position with respect to the plan approved by that Commission; and in that the Commission's order will improperly multiply regulatory approvals required.for the Pittsburgh reorganization plan. The asserted error with respect to burden of proof is in the Commission's imposing upon Philadelphia the burden of demonstrating that the proposed amendment should not be made when, according to the contention of Philadelphia, the Commission should itself sustain the burden of proving the prerequisites to its proposed order of revocation of the exemption afforded by Rule U-49 *(c)*.

## I.

 We think the order of the Commission revoking the exemption theretofore afforded Pittsburgh by Rule U-49 *(c)* was invalid for lack of an adequate hearing, including improper allocation of the burden of proof. It is elementary that the action of an administrative tribunal is adjudicatory in character if it is particular and immediate, rather than, as in the case of legislative or rule making action, general and future in effect. Prentis v. Atlantic Coast Line, 1908, 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150; Louisville & Nashville R. Co. v. Garrett, 1913, 231 U.S. 298, 34 S.Ct. 48, 58 L.Ed. 229; 42 Am.Jur., Public.Administrative Law, §§ 38-40. Within this definition the Commission's order of revocation of Rule U-49 *(c)* is adjudicatory as to Pittsburgh. It is particular, *i.e.*, it applies to the Pittsburgh reorganization alone—so much the Commission admits, as appears in the foregoing statement of facts; and it is immediate in its. operation. As also appears above the order of revocation operates as a *pro tanto* restraint or injunction upon the proceedings, and as a diminution of the authority, of the District Court; as a result of the order, if valid, the reorganization and the administration of the Debtor's estate will, or may, be subject to the operation of all provisions of the Holding Company·Act relating to subsidiaries of registered holding companies, and in conse-

quence the contractual relations of Philadelphia and its affiliates on the one hand with Pittsburgh and its underliers on the other will, or may, be affected. The Commission's order determines concretely the status of Pittsburgh as a subsidiary subject to the Act, Pittsburgh having before the order been by exemption a subsidiary not subject to the Act. We so ruled in Philadelphia Co. v. Securities and Exchange Commission, cited above. The adjudicatory character of the Commission's order of revocation in its relation to Pittsburgh and the Pittsburgh reorganization is we think, in view of all of the foregoing, indubitable. As to the character of the order in relation to such other companies as may in the future come within its ambit we make no ruling; as to them it may be legislative.

 It is elementary also in our system of law that adjudicatory action cannot be validly taken by any tribunal, whether judicial or administrative, except upon a hearing wherein each party shall have opportunity to know of the claims of his opponent, to hear the evidence introduced against him, to cross-examine witnesses, to introduce evidence in his own behalf, and to make argument. This is a requirement of the due process clause of the Fifth Amendment of the Constitution. The applicability of this clause to the quasi-judicial proceedings of an administrative agency is recognized in L. B. Wilson, Inc. v. Federal Communications Commission, 1948, 84 U.S.App. D.C. ——, 170 F.2d 793, citing, among other authorities, Londoner v. Denver, 1908, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103, Radio Commission v. Nelson Bros. Co., 1933, 289 U.S. 266, 53 S.Ct. 627, 77 L.Ed. 1166, 89 A.L.R. 406, and Morgan v. United States, 1938, 304 U.S. 1, 58 S.Ct. 999, 82 L.Ed. 1129. Cf. also WJR, The Goodwill Station, Inc. v. Federal Communications Commission, 84 U.S.App.D.C. ——, 174 F.2d 226. Moreover, the provisions of the Holding Company Act itself contemplate a quasi-judicial hearing for adjudicatory action by the Commission. Section 20 (c) recognizes a distinction between rules and regulations on the one hand and orders on the other and provides that the former "shall be effective upon publication in the manner which the Commission shall prescribe," but that "Orders of the Commission . . . shall be issued only after opportunity for hearing." Section 19 of the Act, 15 U.S.C.A. § 79s, provides that "Hearings may be public and may be held before the Commission, any member or members thereof, or any officer or officers of the Commission designated by it, and appropriate records thereof shall be kept." Section 24 (a) of the Act, providing that any person or party aggrieved by an order of the Commission may obtain a judicial review of the same, contemplates a hearing by the Commission, evidence taken, findings of fact made, and the making of a transcript of the record upon which the order was entered. We think the requirements of this section as written contemplate a hearing conducted in a manner appropriate for adjudicatory action. But even if the requirements of the Act can be said to be less than clear in this respect, they must be construed as contemplating a hearing so held, for "In the case of all acts of Congress, such interpretation ought to be adopted as, without doing violence to the import of the words used, will bring them into harmony with the Constitution. An act of Congress must be taken to be constitutional unless the contrary plainly and papably appears." The Japanese Immigrant Case, 1903, 189 U.S. 86, 101, 23 S.Ct. 611, 47 L.Ed. 721. Furthermore, in respect of the Act itself, it is to be noted that the Commission's Rule U-100 (b)—which must be taken to reflect the Act—recognizes that in respect of the particular type of action taken by the Commission in the instant case a hearing is requisite. That rule provides:

*(b) Orders withdrawing exemption.*—Any unexecuted transaction which is within the exemption provided in any rule from the requirements of any provision of the Act or of the rules, may nevertheless be subjected thereto *by order, after notice and opportunity for hearing,* if it appears to the Commission that the withdrawal of such exemption as applied to such transaction would be appropriate in the public interest or the interest of investors or consumers. The Commission may by such notice suspend the applicability of any such exemption to any transaction pend'ng final determination. [Italics supplied] [General Rules and Regulations under the Public Utility Hold-

ing Company Act of 1935, as amended to and including January 1, 1946]

The words "after notice and . . . hearing" are words of art in our system of law. They connote a hearing appropriate to adjudicatory action, not to legislation or rule making. The Pittsburgh reorganization is an unexecuted transaction clearly falling as such within the ambit of this rule.

▮▮▮▮▮ It follows from the foregoing and from the facts set forth at the outset of this opinion that the Commission's "hearing" on the proposed amendment of Rule U-49 (c) was inadequate as to Philadelphia. The Commission permitted only the submission of data, views and comments and the making of oral argument. It failed, so far as is shown by the record certified to this court, except by its vague references to its "experience" under Rule U-49 (c) and to "situations in which the security structures of registered holding companies and their subsidiaries are entangled," to apprize Philadelphia of the facts upon which its proposed action amending Rule U-49 (c) was to be taken (thereby making futile Philadelphia's offer of proof); and it failed to introduce or receive evidence, to hear witnesses, to permit cross-examination, and to make a proper transcript of record. Accordingly its "hearing" did not satisfy the requirements, for adjudicatory action, of either the due process clause, the Holding Company Act, or the Commission's own

rule. The Commission erroneously failed to assume the burden of proof in respect of the propriety of its proposed action. It was obliged to observe "the essential rules of evidence." Cf. Interstate Commerce Commission v. Louisville & Nashville Railroad Company, 1913, 227 U.S. 88, 33 S.Ct. 185, 57 L.Ed. 431. With some exceptions not here pertinent the burden of proof lies upon him who affirms, not him who denies. 1 Jones, Evidence in Civil Cases (4th ed. 1938) § 180; Stephen, Digest of the Law of Evidence (12th ed. 1946) Article 100. On the contrary of assuming the burden of proof the Commission, as appears from the statement of facts at the outset of this opinion, required Philadelphia to attempt to persuade it that the exemption afforded Pittsburgh by Rule U-49 (c) should not be revoked. We hold accordingly that the Commission's order was invalid for lack of a proper hearing.[3]

The Commission asserts in its brief in the instant case that the factual controversies between it and Philadelphia in respect of the revocation of the exemption afforded by Rule U-49 (c) were minor and that "None of the facts so controverted were referred to or relied upon in the memorandum of views herein." And in its "Memorandum of Views . . . Accompanying Adoption of Rule Amending Rule U-49 (c)," the Commission asserts that "None of the facts herein recited relative to that situation

---

[3] It is of interest to note that the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., in Section 5 requires that in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing (with exceptions not here pertinent) there shall be hearing and decision upon notice and in conformity with Sections 7 and 8, and that Section 7 of that Act, under the title "Hearings," provides. as to evidence:

"(c) Evidence.—Except as statutes otherwise provide, the proponent of a rule or order shall have the burden of proof. Any oral or documentary evidence may be received, but every agency shall as a matter of policy provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence and no sanction shall be imposed or rule or. order be issued except upon consideration of the whole record or such portions thereof as may be cited by any party and as supported by and in accordance with the reliable, probative, and substantial evidence. Every party shall have the right to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts. . . ."

And Section 7 provides with respect to a record:

"(d) Record.—The transcript of testimony and exhibits, together with all papers and requests filed in the proceeding, shall constitute the exclusive record for decision in accordance with section 8 and, upon payment of lawfully prescribed costs, shall be made available to the parties. . . ."

Section 7, however, was not in effect at the time of the initiation of the instant proceeding and we therefore do not rest our decision upon it.

[the Pittsburgh Railways group] are in dispute." But Philadelphia asserts in its briefs that there are factual issues between it and the Commission material to the proposed revocation of the exemption. Whether or not material issues of fact exist we can determine only after an appropriate hearing and a proper record.

## II.

In reaching the conclusion that the order of the Commission is invalid for lack of an adequate hearing we have, consistently with the ruling of the Supreme Court in Rochester Telephone Corporation v. United States, cited above, dealt only with "questions affecting constitutional power, statutory authority and the basic prerequisites of proof." Specifically, we have dealt only with asserted procedural error by the Commission, to wit, Philadelphia's assertion that the Commission's order is invalid as without statutory authority in that it applies in fact to the single reorganization proceeding involving Pittsburgh and in that an adequate hearing on the Commission's proposal to amend Rule U-49 (c) was denied Philadelphia, and with the further assertion of error with respect to the burden of proof in the Commission's imposing upon Philadelphia the burden of demonstrating that the proposed amendment should not be made when, according to the contention of Philadelphia, the Commission should itself sustain the burden of proving the prerequisites to its proposed order of revocation of the exemption afforded by Rule U-49 (c).[4] In accordance with the ruling of this court in WJR, The Goodwill Station, Inc. v. Federal Communications Commission, cited above, we do not now consider the other objections made by Philadelphia, as summarized in the statement of facts at the outset of this opinion, in respect of the validity of the Commission's order, or the response of the Commission to such objections. These objections and the Commission's response relate to the merits of the order in terms of substantive law.

We cannot now determine the validity of the Commission's order on the merits. As we point out in the WJR case, to do so would be to omit to recognize the distinction between questions of correct procedural action and questions of correct decision on the merits. Whether the Commission was under a duty to accord a quasi-judicial hearing to Philadelphia, including allocation to the Commission of the burden of proof, is a procedural question quite separate from the question on the merits whether or not the order of the Commission had a rational and lawful basis. Since it was the duty of the Commission, as we above hold, to accord a quasi-judicial hearing, including allocation of the burden of proof to the Commission, before acting upon the proposed order revoking the exemption afforded Pittsburgh by Rule U-49 (c), and since the Commission, as we also hold, did not accord such a hearing, the question of the correctness of its decision to revoke the exemption is not properly before this court. The Commission's decision has not been validly reached and until it has been so reached it is not properly reviewable. The statutory scheme set up in the Holding Company Act contemplates before review in this court a proper exercise of the Commission's primary jurisdiction (cf. Rochester Telephone Corporation v. United States, cited above), i.e., a valid first instance hearing, properly conducted from the procedural standpoint. The court must therefore remand the case with directions to the Commission to hold an adequate hearing. If after such a hearing the Commission decides that an order of revocation should be entered, an appeal to this court will then bring properly before it the question of the validity on the merits of the Commission's decision. For the court to hold that the Commission is under a procedural duty to

---

[4] Philadelphia's assertion that the Commission's order is invalid as without statutory authority in that it applies to the single reorganization proceeding involving Pittsburgh is, as appears in the résumé set forth above of Philadelphia's attack upon the order, a predicate not only for attack upon the procedural validity of the order but also for Philadelphia's contention that the order is arbitrary as creating among subsidiaries of a registered holding company a classification without reasonable basis. But the latter contention goes to the merits of the order; therefore, for the reasons stated in the text, we do not deal with it now.

820

grant an adequate hearing before reaching its decision upon the merits of its proposal to revoke the exemption, but nevertheless to review the Commission's decision on the merits, would be for the court to condone the denial of adequate hearing. Denial of a procedural right guaranteed by the Constitution—in this instance denial of the type of hearing guaranteed, in view of the adjudicatory character of the Commission's action, by the due process clause—is never "'harmless error." WJR, The Goodwill Station, Inc. v. Federal Communications Commission, cited above.

Order set aside and case remanded for further proceedings in accordance with this opinion.