208 F.2d 829
 93 U.S.App.D.C. 50
 B. F. GOODRICH CO.
v.
FEDERAL TRADE COMMISSION et al.
GENERAL TIRE & RUBBER CO.
v.
FEDERAL TRADE COMMISSION et al.
GOODYEAR TIRE & RUBBER CO., Inc.
v.
FEDERAL TRADE COMMISSION et al.
FIRESTONE TIRE & RUBBER CO.
v.
FEDERAL TRADE COMMISSION et al.
ALLIED TIRE & BATTERY CO. et al.
v.
FEDERAL TRADE COMMISSION et al.
UNITED STATES RUBBER CO.
v.
FEDERAL TRADE COMMISSION et al.
INLAND RUBBER CORP.
v.
FEDERAL TRADE COMMISSION et al.
PACIFIC TIRE & RUBBER CO.
v.
FEDERAL TRADE COMMISSION et al.
DENMAN RUBBER MFG. CO.
v.
FEDERAL TRADE COMMISSION et al.
MANSFIELD TIRE & RUBBER CO.
v.
FEDERAL TRADE COMMISSION et al.
CARLISLE CORP.
v.
FEDERAL TRADE COMMISSION et al.
DURKEE-ATWOOD CO.
v.
FEDERAL TRADE COMMISSION et al.
SEIBERLING RUBBER CO.
v.
FEDERAL TRADE COMMISSION et al.
DUNLOP TIRE & RUBBER CORP.
v.
FEDERAL TRADE COMMISSION et al.
MISSOURI FARMERS ASS'N., Inc.
v.
FEDERAL TRADE COMMISSION et al.
WESTERN AUTO SUPPLY CO.
v.
FEDERAL TRADE COMMISSION et al.
MONTGOMERY WARD & CO., Inc.
v.
FEDERAL TRADE COMMISSION et al.
DAYTON RUBBER CO.
v.
FEDERAL TRADE COMMISSION et al.
LEE RUBBER & TIRE CORP.
v.
FEDERAL TRADE COMMISSION et al.
AMERICAN OIL CO.
v.
FEDERAL TRADE COMMISSION et al.
 Nos. 11644-11663.
 United States Court of Appeals
District of Columbia Circuit.
 Argued April 6, 1953.
Decided July 16, 1953.
 
 [93 U.S.App.D.C. 51] Messrs. Mathias F. Correa and Lowell Wadmond, both of the bar of the Supreme Court of New York, pro hac vice, by special leave of Court, New York City, for appellants in Nos. 11644, 11645, 11646, 11647, 11649, 11650, 11651, 11652, 11653, 11654, 11655, 11656, 11657, 11658, 11659, 11661 and 11662. Mr. J. Paull Marshall, Washington, D.C., was on the brief for appellant in No. 11644. Mr. H. Douglas Weaver, Washington, D.C., entered an appearance for appellant in No. 11645. Mr. James E. Greeley, Washington, D.C., was on the brief for appellant in No. 11646. Messrs. Harold F. Baker and Louis A. Gravelle, Washington, D.C., entered appearances for appellant in No. 11647. Mr. Henry F. Butler, Washington, D.C., was on the brief for appellant in No. 11649. Mr. Charles Walker, Washington, D.C., was on the brief and Mr. Jackson Brodsky, Washington, D.C., entered an appearance for appellants in Nos. 11650, 11651, 11652 and 11653. Mr. William H. Pavitt, Jr., Washington, D.C., entered an appearance for appellants in Nos. 11654 and 11662. Mr. Narvin B. Weaver was on the brief for appellant in No. 11655. Messrs. George M. Morris and John H. Pratt, Washington, D.C., entered appearances for appellant in No. 11656. Mr. John H. Dorsey, Washington, D.C., entered an appearance for appellant in No. 11657. Mr. James M. Desmond, Washington, D.C., was on the brief and Mr. Roy B. Kelly, Washington, D.C., entered an appearance for appellant in No. 11658. Mr. Lawrence C. Moore, Washington, D.C., was on the brief for appellant in No. 11659. Messrs. Alfons B. Landa and Raymond C. Cushwa, Washington, D.C., entered appearances for appellant in No. 11661.
 Mr. John M. Berent, of the bar of the Supreme Court of Illinois, pro hac vice, by special leave of Court, Chicago, Ill., with whom Mr. J. Strouse Campbell, Washington, D.C., was on the brief, for appellants in No. 11648.
 Mr. John A. Barr, of the bar of the Supreme Court of Illinois, pro hac vice, by special leave of Court, Chicago, Ill., with whom Mr. Robert l. Wright, Washington, D.C., was on the brief, for appellant in No. 11660.
 [93 U.S.App.D.C. 52] Mr. Hammond E. Chaffetz, Washington, D.C., with whom Messrs. Herbert J. Miller, Jr., and Perry S. Patterson, Washington, D.C., were on the brief, for appellant in No. 11663.
 Mr. Philip R. Layton, Atty., Federal Trade Commission, of the bar of the Supreme Court of Colorado, pro hac vice, by special leave of Court, with whom Mr. Charles M. Irelan, U.S. Atty. at the time of argument, Washington, D.C., Messrs. William R. Glendon and Ross O'Donoghue, Asst. U.S. Attys., at the time of argument, Washington, D.C., and Mr. Joseph L. Sheehy, Director, Bureau of Antimonopoly, Federal Trade Commission, Washington, D.C., were on the brief, for appellees.
 Before WILBUR K. MILLER, PRETTYMAN and WASHINGTON, Circuit judges.
 PRETTYMAN, Circuit Judge.
 
 
 1
 Appellants are organizations engaged in the rubber tire and tube business, as manufacturers, purchasers and dealers. They were plaintiffs in the District Court in civil actions which sought injunctions against an order of the Federal Trade Commission, known as Quantity-Limit Rule 203-1,[1] promulgated to become effective April 7, 1952. They also sought declaratory judgments. The District Court dismissed the complaints for lack of jurisdiction and also for failure to state a claim upon which relief could be granted.
 
 
 2
 The controversy arises from a section of the Robinson-Patman Act[2] and specifically from the second of two provisos in it. The section makes it unlawful for any person engaged in interstate commerce to discriminate in price between purchasers of commodities, where the effect of the discrimination may be substantially to lessen competition or tend to create a monopoly. Then follows the two provisos, and they read:
 
 
 3
 ' * * * Provided, That nothing herein contained shall prevent differentials which make only due allowance for differences in the cost of manufacture, sale, or delivery resulting from the differing methods or quantities in which such commodities are to such purchasers sold or delivered: Provided, however, That the Federal Trade Commission may, after due investigation and hearing to all interested parties, fix and establish quantity limits, and revise the same as it finds necessary, as to particular commodities or classes of commodities, where it finds that available purchasers in greater quantities are so few as to render differentials on account thereof unjustly discriminatory or promotive of monopoly in any line of commerce; and the foregoing shall then not be construed to permit differentials based on differences in quantities greater than those so fixed and established: * * * .'
 
 
 4
 The first of these provisos has acquired a name in the trade- the cost justification proviso. It provides, as its text shows, that price differentials which make no more than due allowance for certain differences in costs are permitted. Those differences in costs are those resulting from (1) differing methods by which the commodities are sold and (2) the quantities in which they are sold. The second proviso has also acquired a name- the quantity-limit proviso. As its text shows, it gives the Commission power to fix for price purposes quantity limits as to particular commodities under certain conditions. The conditions are that it must find that big quantity purchasers are so few that lowered prices on account of those quantities would be unjustly discriminatory in favor of those few or would tend to create monopoly.
 
 
 5
 Control of prices in commodity markets is a complicated business. But the rationale of this section of the statute, with these two provisos, seems clear upon [93 U.S.App.D.C. 53] its face. Discrimination in prices among customers is one clear method of lessening competition and creating monopoly. At the same time, if a customer purchases in quantities which permit economies in manufacture, those economies ought properly to be passed along to the ultimate consumer. So much is in the public interest. Similarly, if certain customers make their purchases in such manner or on such terms that economies in manufacture are effected, the ultimate consumer ought to share in those lessened costs. That also is in the public interest. However, and again at the same time, there is present in those beneficial circumstances a precisely opposite possibility. If a customer or a small number of customers are able to make purchases in such enormous quantities as to lessen manufacturing costs, and hence ultimate prices, below the possibility of competition from customers buying in less quantities, monopoly would quickly ensue- or so Congress evidently thought. The Commission is empowered to prevent that result. It is given authority to fix a limit beyond which the quantities purchased can have no effect in lessened prices. Such an attempt by the Commission- in fact its first attempt- is the subject matter of the present case.
 
 
 6
 Two different methods of selling rubber tires and tubes are involved. One is the so-called 'dealer' system. In it goods bearing the manufacturers' brand names are sold to distributors or dealers, who in turn resell them, either at wholesale or at retail, to customers. Under trade custom the manufacturers allow to these purchasers discounts based upon the amounts purchased by each of them annually. As annual volume increases, so does the size of the discount. This custom results in a price structure based upon annual purchases. Fourteen manufacturers and thirty-five independent tire dealers complain in the present case that the proposed rule of the Commission would adversely affect, if not destroy, this price structure.
 
 
 7
 The other method of selling here involved is the sale of goods bearing the purchaser's, instead of the manufacturer's, brand name- the so-called 'private brand' arrangement. These purchasers perform some distribution functions- warehousing, advertising, credit, etc.- and bear some distribution costs otherwise borne by the manufacturers. Under trade custom the prices in these sales are based upon long-term contracts which usually provide for prices at cost of production plus an allowance of profit. Twelve plaintiffs complain that the Commission order would adversely affect, if not destroy these private brand price structures.
 
 
 8
 The order of the Commission which is the subject of the plaintiffs' attacks is as follows:
 
 
 9
 'The quantity limit as to replacement tires and tubes made of natural or synthetic rubber for use on motor vehicles as a class of commodity is twenty thousand (20,000) pounds ordered at one time for delivery at one time.'[3]
 
 
 10
 Twenty thousand pounds are a carload. Translated somewhat roughly, the order of the Commission says that no difference in price based upon quantity purchased will be permitted for a quantity in excess of a carload lot. Plaintiffs say that the effect of the order would be to outlaw the existing price structures for both dealers and private brands, and that that is the purpose of the order. They say that the Commission intends to revolutionize the methods by which the industry conducts its business. They also say that the order has many fatal procedural and substantive defects. The Commission says, on the other hand, that it has found in the industry the conditions described in the second proviso of [93 U.S.App.D.C. 54] the statute and that these make necessary the quantity limit which it has formulated. It also says that its order is in all respects valid and proper.
 
 
 11
 We do not have before us at this time any question as to the validity of the order itself. Our problems are whether the District Court had jurisdiction and whether the complaints stated a claim upon which relief could be granted. Those problems boil down to whether the complaints allege the sort of damage which will support injunctive relief against an administrative regulatory order.[4]
 
 
 12
 We turn to the complaints. They differ in some respects. Generally speaking the distributors who operate under cost-plus price contracts and perform certain distribution services allege that compliance with the proposed rule would destroy their ability to compete with other distributors who do not bear such costs. For example, the American Oil Company alleges that it has such a contract with the Mansfield Tire & Rubber Company, under which the tires bear the 'Amoco' brand and the purchaser takes delivery at the factory and performs all distribution services. It alleges that Mansfield has threatened to terminate the contract if the Commission order becomes effective, and that compliance with the order would destroy the facilities used to handle this business and also the value of brand goodwill. Amoco says that, if it complied with the order and continued its present system of doing business, it would be paying Mansfield for services which it (Amoco) performed. Non-compliance, says this Company, would subject it to treble damage suits. Plaintiff Montgomery Ward says that compliance with the proposed order would cause breach of its contracts for the purchase of tires and abandonment of business arrangements of very substantial value and would subject it to possible liability for breach of contracts and to loss of sales. Non-compliance, says Montgomery Ward, would subject it to treble damage suits. Other distributors operating under cost-plus contracts make somewhat less specific allegations than the foregoing by Amoco and Montgomery Ward, but they allege that compliance with the rule would prevent them from performing distribution services and thus impair their competitive positions in the market.
 
 
 13
 The manufacturers who operate under cost-plus contracts allege that the proposed order would 'adversely disturb# the present distribution system, which is based upon the economically sound premise of compensating for distribution services performed by their purchasers. They allege that the complete disruption of that system would disturb commercial relationships to an extent 'which cannot be foreseen' and would disrupt contractual relationships. Non-compliance, they say, would subject them to possible treble damage suits. The extent of the loss and damage, they allege, 'cannot be forecast'. One such company, United States Rubber, says that if it complies it will be faced with the risk of losing its sales to cost-plus dealers and to independent dealers. Other manufacturers are less specific in their allegations.
 
 
 14
 In respect to annual volume (dealer) pricing, the allegations by the manufacturers are general rather than specific. They say that compliance with the order would cause disruption of business and uncertainty as to the continuance of contractual relationships and of customers.
 
 
 15
 Some of the above-described allegations clearly bring the complainants within the doctrine of the Columbia [93 U.S.App.D.C. 55] Broadcasting[5] and Joint Anti-Fascist[6] cases.
 
 
 16
 In the Columbia Broadcasting case the Federal Communications Commission, pursuant to its rule-making power, had entered an order which would require denial of a license to any broadcaster having certain types of contracts with networks. Columbia was a network with large investments and extensive business. It alleged that due to the order its station customers would not negotiate for or renew the contracts, and that consequently its ability to conduct its business was seriously impaired and its earnings and the value of its property reduced. The Court said that according to the complaint #it is evident that application by the Commission of its regulations in accordance with their terms would disrupt appellant's broadcasting system and seriously disorganize its business.'[7] The Court held that regulations which operate to control contractual relationships and which affect or determine rights generally, even though not directed to any particular person or corporation, may be reviewable by the courts. It pointed out that operation of the order in question was not subject to future administrative determination, except for decisions as to whether given contracts were within the order. The purposes of review would be defeated, the Court said, ' if a suitor were unable to resort to them to avoid reasonably anticipated irreparable injury resulting from such legal consequences of the Commission's order, merely because the Commission as yet has neither refused to renew a license, as the regulations require, nor cancelled a license, as the regulations permit.'[8] The opinion in the case is an exhaustive treatment of the entire subject. The decision sustained the right of Columbia to review of the Commission order.
 
 
 17
 In the case at bar several things appear. In the first place, as we have said, some of the plaintiffs have clear standing to sue under the doctrine of the Columbia Broadcasting case. In the second place, it is clear from a reading of the complaints that all the plaintiffs are in substantially the same position in respect to the proposed order. The allegations make clear that the contemplated effects of the order will be industry-wide, not merely applicable to the peculiar circumstances of any one, or of a few, of the plaintiffs. In the third place, it is obvious that, if the action of any one of these plaintiffs lies, all the others would have substantial basis to intervene, and in any event the validity of the order would be the question in any one such action. In the fourth place, there is certainly here present a true case or controversy; no mere advisory opinion is sought. The threat of disruption of business as alleged in the complaints is immediate. The consequences of non-compliance are not restricted to possible Commission action. Treble damage suits by competitors or others and the cancellation or refusal to renew contracts are other realistic potentialities.
 
 
 18
 Some contention revolves about the fact that the Commission order, being entered under the provisos here involved, would simply deprive the companies of a possible defense to charges of violating the basic provision of the statute. The order would not by direct application invalidate or prohibit any contract or price arrangement. Only if the companies proposed price differentials based upon quantity purchases in excess of the prescribed quantity limit would the order affect their business. It is also said that plaintiffs may have other possible defenses to alleged violations of the price discrimination prohibitions. But we think these contentions are unrealistic. [93 U.S.App.D.C. 56] Upon the allegations of the complaints the threats of damage are direct and immediate in a very practical sense. And there are, of course, penalties involved. Plaintiffs are in substance in about the same situation as was Columbia Broadcasting System.
 
 
 19
 We think the proper disposition of the cases under the circumstances is to remand them all with directions to the District Court to entertain them as an initial step, and if upon hearing it develops that some of the plaintiffs are not actually threatened with damage by way of disruption of business, those complaints can be dismissed. It would seem unnecessary to say, but out of abundance of caution we do say, that nothing in this opinion is to be construed as intimating any opinion one way or the other upon the validity of the Commission's order. We have before us only the questions of jurisdiction and of the sufficiency of the complaints. For those purposes we treat as true the allegations of the complaints. What the result of the trial on the merits may be we in no way attempt to forecast.
 
 
 20
 The judgments of the District Court will be reversed and the cases remanded for further proceedings in accord with this opinion.
 
 
 21
 Reversed and remanded.
 
 
 
 [1]
 17 Fed.Reg. 113 (1952), 16 Code Fed.Regs. § 310.1
 
 
 [2]
 49 Stat. 1526 (1936), 15 U.S.C.A. § 13(a)
 
 
 [3]
 In its Statement with respect to its findings, the Commission held in direct terms that the proposed order would apply to purchases on cost-plus contracts, which seemingly do not involve quantity differentials
 
 
 [4]
 See Sec. 10(d) of the Administrative Procedure Act, 60 Stat. 243 (1946), 5 U.S.C.A. § 1009(d); Columbia Broadcasting System v. United States, 1942, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563; Stark v. Wickard, 1944, 321 U.S. 288, 64 S.Ct. 559, 88 L.Ed. 733; Joint Anti-Fascist Refugee Committee v. McGrath, 1951, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817
 
 
 [5]
 Columbia Broadcasting System v. United States, 1942, 316 U.S. 407, 62 S.Ct. 1194, 86 L.Ed. 1563
 
 
 [6]
 Joint Anti-Fascist Refugee Committee v. McGrath, 1951, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817
 
 
 [7]
 Supra, 316 U.S.at page 414, 62 S.Ct.at page 1199
 
 
 [8]
 Id., 316 U.S.at page 419, 62 S.Ct.at page 1201