247 F.2d 557
 101 U.S.App.D.C. 151
 ASSOCIATED-BANNING COMPANY et al., Petitioners,
v.
UNITED STATES of America, Federal Maritime Board,
Respondents, Matson Navigation Company, Encinal
Terminals, Matson Terminals, Inc.,
Matcinal Corporation,
Intervenors, Howard
Terminal,
Intervenor.
 No. 13384.
 United States Court of Appeals District of Columbia Circuit.
 Argued Feb. 4, 1957.
Decided June 21, 1957, Petition for Rehearing Denied Sept. 12, 1957.
 
 Mr. Odell Kominers, Washington, D.C., with whom Messrs. J. Alton Boyer, Henry G. Fischer, Washington, D.C., and Allan P. Matthew, San Francisco, Cal., were on the brief, for petitioners, and intervenor, Howard Terminal.
 Mr. Donald F. Melchior, Atty., Dept. of Justice, with whom Mr. Daniel M. Friedman, Atty., Dept of Justice, was on the brief, for respondent United States of America.
 Mr. Charles H. Weston, Atty., Dept. of Justice, also entered an appearance for respondent United States of America.
 Mr. Edward Aptaker, Chief, Regulation Branch, Federal Maritime Board, with whom Messrs. Edward D. Ransom, Gen. Counsel, Federal Maritime Board, and James L. Pimper, Asst. Gen. Counsel, Federal Maritime Board, were on the brief, for respondent Federal Maritime Board.
 Mr. Alvin J. Rockwell, San Francisco, Cal., with whom Messrs. Hugh T. Fullerton and Tom Killefer, San Francisco, Cal., were on the brief, for intervenors Matson Nav. Co., and others.
 Mr. Noble McCartney also entered an appearance for intervenor Encinal Terminals.
 Before WILBUR K. MILLER, WASHINGTON and DANAHER, Circuit judges.
 DANAHER, Circuit Judge.
 
 
 1
 Petitioners[1] seek review of an order of the Federal Maritime Board approving Agreement No. 8063[2] which had been filed with the Board on January 9, 1956, pursuant to the requirements of 15 of the Shipping Act, 1916, 46 U.S.C.A. 814 (1952).[3] After notice of the filing of the Agreement had been published in the Federal Register, petitioners lodged a protest, and, six days later, filed a formal complaint to which the Board assigned Docket No. 788.
 
 
 2
 Summarized, the protest alleged that Agreement No. 8063 was not a 'true and complete' momorandum as required by 15 of the Act; otherwise charged in some detail that the new corporation, Matcinal, would enjoy an unfair competitive advantage over petitioners; and finally, that the Agreement, in violation of 15 of the Act, would be detrimental to commerce, unjustly discriminatory and unfair as between carriers and ports and would further violate 14, 16, 17 and 20 of the Shipping Act, 1916.
 
 
 3
 Matson and Encinal responded, separately but in substance: that the protest failed to disclose any ground for disapproval of the Agreement; petitioners had failed to show any injury to themselves; Matcinal had not yet engaged in business and had taken merely preliminary steps in that operations would commence only upon approval of Agreement No. 8063; 15 afforded petitioners no basis for relief; the Agreement does not violate the Shipping Act of 1916; petitioners have a complete remedy under the Act if there should be 'in the future any illegal discrimination or any other conduct violative of the Shipping Act of 1916'; and, finally, that petitioners really sought, as a coalition controlling the stevedoring business in San Francisco, 'to prevent or delay the emergence of a competitor.'
 
 
 4
 The complaint, Docket No. 788, charged that the Agreement to form Matcinal contemplated future activities and organization beyond what had been disclosed and that the Agreement failed to constitute a 'true and complete memorandum,' because of which 'the activities of Matson and Encinal * * * are unlawful and in violation of 15 * * * of the Act.' The complaint further alleged that through the business relationships of encinal and Matson, the formation of Matcinal would constitute an unjust and unfair device or means through which illegal rebates of ocean freights would result, and accordingly, the plan in practice, will be unjustly discriminatory and otherwise violate 14, 15, 16, 17 and 20 of the Shipping Act, 1916.
 
 
 5
 With answers denying the charges in the complaint, Matson and Encinal also filed a joint motion to dismiss. Petitioners thereupon prayed the issuance of an order of investigation upon the protest, and its consolidation with Docket No. 788.
 
 
 6
 The Board by its April 6, 1956, order granted the motions of Matson and Encinal and dismissed the complaint 'as to all allegations except the allegation under 15 of the Shipping Act, 1916, as amended, to the effect that respondents are operating under an agreement which has not been filed for approval under said section.'[4] These review proceedings followed.[5]
 
 
 7
 The protest and the complaint before the Board, as well at the petition here, proceed primarily from and depend upon allegations as to invalid Board action within the applicable provisions of 15 of the Shipping Act, 1916.[6] Petitioners ask us to set aside and annul the Board's order of April 6, 1956, approving Agreement No. 8063; to remand the proceedings to the Board for the purpose of holding a hearing with respect to whether or not Agreement No. 8063 is a true and complete copy of the agreement between the parties thereto, and if so, whether the agreement shall be approved by the Board; or alternatively that we transfer the proceedings to an appropriate United States District Court for de novo hearing and determination; and that we set aside or annul the Board's order 'granting in part' the respondents' motion to dismiss the complaint in Docket No. 788, with remand thereafter to the Board that a hearing be held upon all allegations of the complaint. Unless there be a 'final' order by the Board, we lack jurisdiction to grant relief in any of the particulars sought.[7]
 
 
 8
 We may preliminarily note that 15 of the Act specifically authorizes the Board to 'disapprove, cancel, or modify any agreement * * * whether or not previously approved by it, that it finds to be unjustly discriminatory or unfair * * * or to be in violation of this chapter * * *.' Moreover, agreements which shall have been approved 'shall be lawful only when and as long as approved by the (Board),' and there is provision, in the event of violation, for a penalty of $1,000 for each day such violation may be continued, to be recovered by the United States in a civil action. In addition, 'any person may file with the (Board) a sworn complaint setting forth any violation of this chapter by a * * * person subject to this chapter, and asking reparation for the injury, if any, caused thereby,'[8] and, after hearing, upon determination by the Board of any such violaton, the Board may order 'full reparation to the complainant for the injury caused by such violation.' Present, clearly, are possibilities of remedial action, both public and private in character, as a deterrent to premature action by any persons subject to the Act.
 
 
 9
 Quite apart, however, Agreement No. 8063 not only spoke of the desire of the parties 'to create a corporation,' which they agreed they 'shall cause * * * to be formed' upon a proposed subscription basis 'subject to the prior approval of any regulatory agencies whose approval is required,' but said further:
 
 
 10
 'Section 6: To the extent that the activities of the Corporation are subject to the prior approval or permission of any regulatory body the parties agree to use, and to cause the Corporation to use, all reasonable efforts to obtain such approval or permission.
 
 
 11
 'Section 7: The parties recognize that the agreement herein contained requires the approval of the Federal Maritime Board under Section 15 of the Shipping Act, 1916, as amended (Title 46, United States Code, Section 814). Unless and until such approval is obtained, this agreement shall be of no force or effect.'
 
 
 12
 The Act in 15 provides for the filing of a 'true copy, or, if oral, a true and complete memorandum, of every agreement * * *.' The Board certainly knows as the section provides, that the term 'agreement' includes 'understandings, conferences, and other arrangements.' Its order dismissed the complaint as to all allegations except that under 15 'to the effect that respondents are operating under an agreement which has not been filed for approval under said section.'
 
 
 13
 So far as the Board approved Agreement No. 8063, it was passing first upon a written document calling for the creation of a corporation to be formed. Unless that plan met with Board approval, the agreement as the parties themselves provided, supra, was to be of no force and effect. Next, the Board's order clearly contemplated proceedings looking to an ascertainment of whether or not the respondents 'are operating'; if operating, whether or not under an 'agreement' as defined in the Act; if under such an agreement in writing, whether or not the Board had a 'true copy,' including 'understandings, conferences, and other arrangements'; if oral, whether or not there had been filed 'a true and complete memorandum' of every 'agreement' as defined in the section.
 
 
 14
 The language of the Act does not look inanely to mere Board approval of a business agreement for the formation of a corporation, but to an agreement the aims and purposes of which will bring it within the reach of the section and the results therein proscribed. Thus, not the extent of any or all 'operating' was the objective of the hearing, but only such as occurred 'under,' i.e., pursuant to, an agreement subject to approval and required to be approved to effectuate the purposes of the section. The continuing power of the Board and the sanctions and penalties provided, considered with the section as a whole, make clear the intent of Congress as to the basis upon which the exemption may be accorded. Thus the Board ordered a hearing to determine whether or not Respondents had been operating under such circumstances and pursuant to such an 'agreement' as came within the section, that is, the whole agreement, whatever it may be.
 
 
 15
 We do not know what the result will be. We cannot assume that the Board will not conduct its hearing within the intendment of the Act, so far as it may apply. It may well be, for all we are shown, that the Board's ultimate action will completely dispel every prospective fear voiced by the protest and the complaint. It is clear that the Board has not as yet entered an order 'final' as to these petitioners.[9]
 
 
 16
 Petitioners, relying upon Isbrandtsen Co. v. United States,[10] insist to us that the Board's order was 'final.' In that case, however, the order under attack was to become effective within 48 hours. We noted that in the Board's denial of Isbrandtsen's request to postpone operations of the dual rate system and to grant an immediate hearing, the Board had virtually removed Isbrandtsen from the shipping market involved. Moreover, the Board was allowing the dual rate agreement to go into effect prior to Board approval.
 
 
 17
 We have no such situation here. On the contrary, hearings are actually going forward as to that portion of the complaint over which the Board retained jurisdiction. Until it shall conclusively have acted, there is no final order for us to review.[11]
 
 
 18
 Dismissed.
 
 
 19
 WASHINGTON, Circuit Judge (dissenting).
 
 
 20
 I am constrained to disagree with the court's disposition of this petition. In my view, the portion of the Federal Maritime Board's order which approved Agreement No. 8063 is final, and hence is properly reviewable now.
 
 
 21
 The Board's order dealt with two separate but related proceedings: (1) Agreement No. 8063 filed for approval, and the protest as to it, and (2) the complaint and the motion to dismiss it. The protest attacked Agreement No. 8063, as well as containing other allegations. The complaint did not attack Agreement No. 8063 as such, but instead alleged in substance that the parties to it were in fact operating under a different agreement which had not been filed for approval and which was in violation of the Shipping Act, 1916. The Board's order stated that 'Agreement No. 8063 be, and the same is hereby, approved,' and in a separate paragraph dealt with the different subject matter of the complaint, dismissing it except for the allegation that the parties 'are operating under an agreement which has not been filed for approval.' Approval to Agreement No. 8063 has thus been finally given. The hearing which is now being held in the Board is to determine whether the parties are actually operating currently under an additional or different agreement which has not been filed for, or received, Board approval. If they are, they will be in violation of Section 15 and presumably will be restrained; if they are not, the complaint will be dismissed. In either event, it is not certain that the approval of Agreement No. 8063 will be in question or will be considered.[1]
 
 
 22
 The statute plainly requires the Board to consider all agreements of the sort involved here and either approve or disapprove. And this includes business agreements for the formation of corporations, when the contracting parties are subject to Section 15. No agreements are lawful until approved, and when approved, they are exempt from the antitrust laws. See Isbrandtsen Co., Inc. v. United States, 93 U.S.App.D.C. 293, 211 F.2d 51, certiorari denied sub. nom. Federal Maritime Board v. United States, 1954, 347 U.S. 990, 74 S.Ct. 852, 98 L.Ed. 1124. In my view approval constitutes final action as to the particular agreement approved, irrespective of questions as to other agreements the parties may make, and the Board proceedings and order so treat it. The fact that Section 15 itself authorizes the Board to cancel or modify agreements, even after approval, if it later finds cause to do so, should not affect present review-ability of the approval. If the approval of the agreement is invalid action, the validity should be tested now; otherwise the Board can always defer review on the ground that it might in the future change its mind as to the action it has taken.
 
 
 23
 I think the Ninth Circuit's decision in a companion case infers that the issue here is reviewable. Howard Terminal v. United States, 1956, 239 F.2d 336. There, the court was dealing with a complaint alone, part of which had been dismissed. The court declined to review the dismissal, using the Federal rule on multiple claims as an analogy. But it pointed out that the Board's approval of the contracts was now the subject of litigation in this court. I think this indicates that the Ninth Circuit thought the Board's action in approving the agreement is presently reviewable, regardless of the outcome of pending or subsequent charges about specific violations of the statute.
 
 
 24
 An additional point should be made. If the validity of the Board's approval of Agreement No. 8063 may not be reviewed now, the contracting parties are acting at their peril under an agreement which may be unlawful under the antitrust laws if it is later determined that there has not been valid Board approval. The contracting parties have a strong interest in having the lawfulness of their activity determined at an early date. The petitioners must also be interested in prompt decision. I do not think this petition should be dismissed without seeking the views of all parties on the issue of finality. Here, the issue of finality has not been briefed; intervenors' latest written statement to the court suggests only that decision in this case be deferred. In fairness to all concerned, we should at least stay our hand until we have received their views.
 
 
 
 [1]
 Associated Banning Company and tenother separate corporations are each engaged in the terminal, stevedoring or carloading and car-unloading business in the San Francisco Bay area. Howard Terminal, similarly engaged, intervened, and all will hereinafter be referred to as Petitioners
 
 
 [2]
 The Agreement between Matson Navigation Company (Matson) and Encinal Terminals (Encinal) provided for the formation of Matcinal Corporation (Matcinal) to conduct terminal, stevedoring and carloading and unloading operations in the Bay area
 
 
 [3]
 Act of Sept. 7, 1916, c. 451, 39 Stat. 728, as amended, 46 U.S.C.A. 801-842 (1952)
 
 
 [4]
 We are advised that a hearing went forward under this portion of the order
 
 
 [5]
 The United States through the Department of Justice is a respondent pursuant to 5 U.S.C.A. 1034 (1952), and substantially takes the position of the petitioners. The real respondent is the Board. Its position is substantially that taken by Matson Navigation Company, Encinal Terminals, Matson Terminals, Inc., and Matcinal Corporation, intervenors
 
 
 [6]
 Supra note 3, 46 U.S.C.A. 814 (1952)
 
 
 [7]
 We may 'enjoin, set aside, suspend (in whole or in part), or * * * determine the validity of * * * final orders * * *' of the Board. 64 Stat. 1129 (1950), as amended, 5 U.S.C.A. 1032 (Supp. III, 1956); and see 64 Stat. 1130 (1950), 5 U.S.C.A. 1034 (1952)
 
 
 [8]
 46 U.S.C.A. 821 (1952)
 
 
 [9]
 In the view we take of the case, it becomes unnecessary for us to reach the question of whether or not these petitioners have standing to seek review. That 15 authorizes the Board to act in the public interest is clear; not so, that its action, once taken, is subject to review at the instance of those asserting private rights. Cf. Kansas City Power & Light Company v. McKay, 1955, 96 U.S.App.D.C. 273, 280 et seq., 225 F.2d 924, 931 et seq., certiorari denied, 1955, 350 U.S. 884, 76 S.Ct. 137, 100 L.Ed. 780; First National Bank v. First Federal Sav. & L. Ass'n, 1955, 96 U.S.App.D.C. 194, 225 F.2d 33
 
 
 [10]
 1954, 93 U.S.App.D.C. 293, 211 F.2d 51, certiorari denied, Federal Maritime Board v. U.S., 1954, 347 U.S. 990, 74 S.Ct. 852, 98 L.Ed. 1124
 
 
 [11]
 Cf. Howard Terminal v. United States, 9 Cir., 1956, 239 F.2d 336, with reference to Agreement No. 8063 and the complaint in Docket No. 788 following a petition filed by Howard Terminal, one of the intervenors here
 
 
 [1]
 It is of course true that if the Board in considering the portion of the complaint that was not dismissed determines that intervenors did not submit their entire agreement for Board approval, it might fashion a remedy which would, among other things, revoke the approval previously given. Cf. Recommendation of the Examiner, FMB Dockets Nos. 788, 796, 798. But the possibility that future agency action may render moot a controversy arising from agency action that is final does not defeat reviewability, though it might be good reason for us to delay our own disposition of a petition for review